OSTEEN LYNCH *v.* J. C. LA RUE d/b/a The J. C. La Rue Canning Company, *et al.*

(*Nashville,* December Term, 1954.)

Opinion filed April 7, 1955.

EMERY B. GILL, of Centerville, and D. D. HUMPHREYS, JR., of Hohenwald, for appellant.

R. R. HAGGARD, of Waynesboro, for appellee.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This is an appeal by Osteen Lynch from the judgment of the Circuit Court dismissing his petition for compensation under the provisions of our Workmen's Compensation Law, Code, Section 6851 et seq.

In August of 1945 Lynch received an electricity shock which rendered him unconscious for a substantial number of minutes. This accident arose out of, and in the course of, his employment by defendant, J. C. La Rue, whose business fell within the requirements of the Workmen's Compensation Law.

The doctor who represented both the employer and his insurer was immediately called. That doctor found Lynch's condition ''pretty low'', with a blood count that was ''very low''. His head was hurting. In response to an inquiry as to what those symptoms indicated, this doctor said ''you get that from an electrical shock, or you can get it from any shock''. Six weeks thereafter he discharged Lynch as ''completely recovered''.

Lynch immediately went back to work, but for another employer. With the exception of a short interruption for

an appendix operation in December of 1945, and tonsil and hemorrhoid operations in 1946 he worked regularly until September of 1952. He then consulted his doctor with reference to the cause of a "drawing" in the back of his neck which he first noticed in August, 1952. This was followed in October of 1952 by blackout spells and drowsiness preceded by prolonged severe headaches.

His physician, Dr. Woods, sent him to Dr. McClure, a neurological surgeon for further diagnosis. An X ray of his skull revealed the fact that Lynch had a "cerebrovascular disease". An operation followed. He continues under treatment by Dr. McClure.

Within a few months after the discovery of this physical condition, Lynch brought this suit against his employer, La Rue, on the theory that the disease which was first discovered in October of 1952 was caused by the aforesaid electrical shock received in August of 1945.

One of the three reasons given by the Trial Judge for the dismissal of the petition is that the evidence "failed to show any causal connection between the accident and the injuries complained of in his petition".

Only two of the doctors were asked about any connection between the 1945 accident and the 1952 disease. One of these was Dr. Powers, the physician who attended him immediately after the 1945 accident. When asked whether the brain condition found by Dr. McClure "could have been" caused by the 1945 electrical shock he replied "Well, I am not an expert witness, understand, but it could have been, yet, I am not saying yes". He repeated that he was not saying yes, but that "it is possible".

The testimony of Dr. McClure as to the cause of this brain disease discovered in 1952 is that:

"The cause of this trouble is difficult to definitely define, although there are several possible causes in his case, namely, a severe electrical burn over the right side of his head ten years ago, with an extreme nervous tension ever since, either of which factors could be responsible."

There is no evidence that Mr. Lynch suffered "an extreme nervous tension ever since" the 1945 accident. The evidence is quite the contrary. Therefore, Dr. McClure's testimony is that the electrical shock received in 1945 "could be responsible" for the brain condition discovered by Dr. McClure.

It is to be noted that neither of the medical witnesses was willing to express an opinion that there is a causal relation between the 1945 accident and the brain disease discovered in 1952. The extent to which they would go is that, in the language of Dr. Powers, such causal connection "is possible" or, in the words of Dr. McClure, "could be responsible".

It is elementary that an award cannot be predicated solely upon the testimony of medical experts who are not willing to go any further than to say that it "is possible" or "could be" that there is a causal connection between the accident and the injury for which compensation is sought. However, such testimony is not entirely without value if there be other evidence from which the trial judge may reasonably infer that the injury did result from the accident that the experts say "could be" the cause of the injury. Read the discussion in Volume 4 N. A. C. C. A. Law Journal, page 78, and cases there cited.

The only other evidence in this record with reference to this causal connection question is that of the injured employee, Mr. Lynch. His testimony is that the only head

injury he ever had in his life was the one received at the time of the 1945 accident and that the only electricity shock he ever received was in the 1945 accident. In connection with this evidence, we have the testimony of two medical experts that the 1945 accident ''could be'' the cause of the trouble discovered in 1952. In view of the evidence stated, nothing else appearing, a reasonable inference is that there is a causal connection between the 1945 accident and the brain trouble in question.

But Mr. Lynch also testified that from the time he was released by Dr. Powers in September of 1945 as a ''completely recovered'' person he never suffered any pain about his head until September of 1952, and until that time ''felt perfectly normal'' in every manner except for the appendix and tonsil operations heretofore mentioned, and had no pains or blackouts or any other trouble with his head during all those intervening years. In connection with this evidence, we have the testimony of Dr. McClure that it is difficult to define the cause of this brain disease, though there are several possible causes. In view of the evidence stated, a reasonable inference is that there is no causal connection between the 1945 accident and the brain disease in question.

Thus it is that the facts established by the undisputed evidence make reasonable each of two contrary inferences. One of these inferences supports a conclusion of a causal connection. The other supports an opposite conclusion.

In that situation, the trial judge, in his findings of fact, stated that Mr. Lynch ''has failed to carry the burden of proof that his injury arose out of and in the course of his employment''. The language used to state the same result in the judgment is that the evidence ''failed to show any causal connection between the accident and the injuries complained of in his petition''.

■ The record being as stated, the disposition to be made of this appeal is controlled by *Hartwell Motor Co., Inc.* v. *Hickerson,* 160 Tenn. 513, 519-520, 26 S. W. (2d) 153, wherein it is held that if the findings of the trial judge are supported by inferences which may reasonably be had from the evidence, though that evidence be reasonably capable of opposing inferences, a reviewing court will not disturb those findings.

■ Aside from *Hartwell Motor Co., Inc.* v. *Hickerson,* supra, the evidence in this case supporting the one conclusion or the opposite upon the issue of causal connection is such that a reviewing court cannot reasonably hold that the trial judge was wrong in finding that Mr. Lynch has failed to carry the burden of proof upon this question of causal connection.

For the reasons stated the judgment must be affirmed with costs.