LAUGHLIN CLINIC, INC., and MARYLAND CASUALTY
COMPANY,

*v.*

MINNIE HENLEY.

(*Knoxville,* September Term, 1960.)

Opinion filed April 5, 1961.

N. R. Coleman, Jr., Fraker, Silvers & Coleman, Greeneville, for plaintiffs in error.

John A. Armstrong, Greeneville, for defendant in error.

Mr. Justice Tomlinson delivered the opinion of the Court.

Laughlin Clinic, Inc. and its insurer appeal from the judgment of the Circuit Court awarding its employee,

Mrs. Minnie Henley, a judgment based upon (1) a finding by that Court of a 75 percent permanent partial disability to her body as a whole, and (2) total disability for 27 weeks following the date of the filing of her petition for compensation, and (3) for medical and hospital expenses incurred in treatment of the alleged injuries. The awards were for injuries alleged to have resulted to her back.

It is insisted that Mrs. Henley did not give the notice required by the statute, T.C.A. secs. 50-1001 and 50-1002; therefore, not entitled to any award. The Trial Judge found to the contrary.

Mrs. Henley, 58 years of age, had been employed in the Clinic for more than three years as a nurses' aid. She performed the duties usually assigned to such a position. On July 17, 1959, while she was carrying on a tray a pitcher containing water and a glass, her feet slipped and she fell to the title floor, "landing on the tip of her spine".

Dr. Robert G. Brown was a stockholder and director of this Clinic. Mrs. Bertha Cunningham was the supervisor of its nurses. While Dr. Brown and Mrs. Cunningham were making the rounds of visiting his patients on the morning of the accident she "heard something hit the floor" and "saw Mrs. Henley sitting down on her bottom as if her feet had slipped out from under her". Some of the employees were helping her up. Dr. Brown saw her getting up from the floor. Both of these occupied supervisory positions in this hospital. Therefore, it had actual knowledge of the accident.

Its contention is, however, that it had neither notice nor knowledge that any injury to her back had occurred, or

claimed, as a result of this fall until more than thirty days after the fall.

Mrs. Henley had a previous unfavorable back condition of long standing. For some eight months before this fall she had been wearing a brace upon the advice of Dr. Brown. Since then she had not suffered much back pain until this accident. She says that she told Dr. Brown two or three days after the accident that "I fell and hurt myself". She does not say that she complained at that time of injury to her back. She continued to work until September 11, 1959, a period of approximately two months.

Her testimony is that after the fall the pain in her back progressively increased until on September 12 it became so acute that she went to Dr. Brown and so advised him. He put her in the hospital and in traction. She says that on that occasion she made inquiry of him as to whether "this fall could have had something to do with my back condition". It is a permissible fact conclusion from that inquiry by Mrs. Henley that she did not at first associate the increased pain in her back with the accident, but had finally become aware in her own mind of the probability of such a connection at the time she addressed this inquiry to Dr. Brown. Until she reasonably became aware of such a connection, there is a basis in reason within the purview of the statute, sec. 50-1001, T.C.A., for not sooner giving the notice. So, when such excuse is satisfactory to the Trial Judge this Court will not disturb his acceptance thereof. *Black Diamond Collieries v. Deal*, 144 Tenn. 465, 467, 234 S.W. 322; *Marshall Construction Company v. Russell*, 163 Tenn. 410, 416, 43 S.W.2d 208.

A fair inference from Dr. Brown's testimony is that the information she gave him on September 12 as to the

increased pain in her back gave him an awareness of a connection between the accident and that increased pain. When asked whether in connection with his examination on that date she made "any reference whatsoever to the fall on July 17", he replied that he could not definitely say that she did, "except there was the history of the fall". In short, he at once associated the increased pain with the fall. He had been aware of, and had treated her for, her back condition previous to the fall, and had put her in the brace which she was wearing at the time of the fall.

Appropriately, it may be added that no prejudice to the Clinic is conceivable by reason of the short delay in becoming aware of the connection between the fall and the increased back pain.

■ Based on the fact that Mrs. Henley did have an injured back before this accident, it is the contention of the Clinic that there is no evidence that the accident contributed to the present condition of her back.

Mrs. Henley's back had been giving her trouble for some years prior to the accident. As aforesaid, some eight months prior thereto she began to wear a brace at the direction of Dr. Brown. Her pain seems thereby to have been reduced to a minimum until the accident. Immediately following the accident she took non-narcotic pain-relieving medicine and continued her work at the Clinic, although the pain in her back increased from day to day until on September 11 it became such as to necessitate a cessation from work. It was then that she went back to Dr. Brown and he admitted her to the Clinic where she was placed in traction and remained there until October 10, 1959.

She was never able to return to work, and the rather intense back pain continued until finally in March of 1960, after consulting a doctor whose name was given to her by her brother, a physician, she was admitted as a patient in the University of Tennessee Hospital and there was operated upon by Dr. Turney for a herniated disc. She was sent home on April 24, 1960 and remained a bed patient for a number of weeks. She has improved but is unable to do any work.

Though she had suffered with her back for a considerable number of years, she was able for three years preceding the accident to perform satisfactorily the duties of her employment in this Clinic. For eight months prior to the accident, and due to the brace which she was then wearing at Dr. Brown's instruction, she was able to perform those duties without much pain. She noticed after she went home on the day of the accident the pain in her back and complained to her husband about it. According to her testimony, but not his, she was able, however, to continue the performance of her housework until September. She has not since been able to do her housework, or any other kind of work to any appreciable extent. All this is substantial evidence that the accident aggravated the back injury which existed prior to the accident. Substantial testimony is to the effect that she is suffering a 75% to 80% permanent disability to the body as a whole by reason of the present condition of her back.

Dr. Brown and Dr. Turney each testified that in his opinion the fall in July of 1959 did not contribute to the present condition of her back. When, however, Dr. Brown's attention was called to the fact that she was able to satisfactorily perform the duties of her employment prior to the accident, but that immediately after

the accident the pain in her back continued to increase until she no longer was able to perform those duties, and has since not been able to do so, was then asked whether the fall "could easily have aggravated the pre-existing back condition", he replied that "it is possible". Dr. Turney testified that under these conditions "I would say that is a reasonable aggravating factor, and if so, it might have to be assumed an aggravation of the pre-existing condition".

Since there was the hereinbefore detailed evidence as to the change in her ability to work before and since the accident the testimony of these doctors to the effect that under those circumstances "it is possible" or might be regarded as a "reasonable aggravating factor" is not "entirely without value" as evidence of a causal connection between the accident and the injury for which the compensation was awarded. *Lynch v. La Rue*, 198 Tenn. 101, 104, 278 S.W.2d 85.

It is contended, however, that the Trial Judge "should have apportioned any award between the pre-existing condition of the petitioner and the back injury allegedly caused by the fall", and should have allowed the development of evidence as to the proper apportionment.

When Mrs. Henley entered the employ of the Clinic she was able to do the work for which she was employed, her unfavorable back condition notwithstanding. She continued to be able to do that work to the satisfaction of the Clinic until she sustained this fall. She has not thereafter, with the exception of the first six or eight weeks, been able to perform any of those duties. Aside from any precedent with reference to the insistence stated, therefore, it strikes the average mind as being

inconsistent with the application of fairness to reduce the amount of the compensation to which she is otherwise entitled by reason of the condition of her back at the time she entered the employ of this Clinic. Read *Knoxville Knitting Mills Company v. Galyon,* 148 Tenn. 228, 255 S.W. 41, 30 A.L.R. 976.

Nor does the only statute we have dealing with the proposition of a subsequent permanent injury after a previous injury, T.C.A. sec. 50-1027, apply to the situation in the case at bar. *Tomes v. Gray & Dudley Company,* 201 Tenn. 697, 301 S.W.2d 389. Moreover, the ruling in the Tomes case and in *American Casualty Insurance Company v. White,* 207 Tenn. 294, 339 S.W.2d 15, is contrary to the Clinic's insistence of apportionment. That insistence is rejected.

Complaint is made of the refusal of the Trial Judge to sustain the application of the Clinic on the morning the case was called for trial to postpone the hearing because of the necessary absence of Mrs. Cunningham, the supervisor of the nurses. The basis for the application was that she was the only witness to the alleged fall and is a material witness to sustain the defendants' insistence.

The statement of Mrs. Cunningham was read into the record. It recites that she saw Mrs. Henley fall, and that Mrs. Henley did not at that time complain that the fall injured her back, nor did she make that complaint to Mrs. Cunningham before she left in September. It appears convincingly from Mrs. Cunningham's statement that her testimony would have added nothing to strengthen the defendants' case. Mrs. Henley does not testify that she so informed Mrs. Cunningham before Mrs. Henley felt

compelled to quit work in September because of the intensity to which the back pain had increased. The denial of the application for a continuance was without prejudice.

Mrs. Henley filed a quite informal statement of medical and hospital bills incurred in the amount of $2,-072.94. The action of the Court in allowing the recovery for these expenses to the extent of $1,800, the maximum fixed by the statute, is assigned as error. Among the complaints made as to this are that there is no proof that Mrs. Henley obtained the prior approval of the Clinic before incurring such expense, or that she consulted the Clinic about it, or that it had any knowledge that such had been incurred.

The expenses incurred at the Laughlin Clinic, to wit, its hospital bill of $580.89 and X-ray of $25, were incurred with the authority and at the instance of Dr. Brown, an official of the Clinic. They were for expenses incurred two months after the accident when she was put into the hospital and given treatment for the pain her back was then giving her. These two items of Mrs. Henley's statement were correctly allowed.

The remaining items in Mrs. Henley's statement were for expenses incurred months later by reason of an operation and stay in the University of Tennessee Hospital and other expenses incident to such operation and stay. Mrs. Henley did not consult the employer, Laughlin Clinic, about this, nor inform them that she was going to incur these expenses. Such being the situation, it was error to allow them. As to the expenses incurred under such circumstances this Court says in *Proctor & Gamble Defense Corp. v. West,* 203 Tenn. 138, 145, 310 S.W.2d 178, that the pertinent code section, 50-1004 T.C.A.,

"makes it clear that the intent of the statute was for the employee to certainly do not less than consult his employer before incurring the expenses called for by that statute if the employee expects the employer to pay for it. The opposite would seem to be against public policy. Read *Irwin v. Fulton Sylphon Co.,* 179 Tenn. 346, 166 S.W.2d 610."

The judgment of the Circuit Court will be modified so as to allow medical and hospital expenses to the extent of $605.89. As so modified, the judgment of the Circuit Court will be affirmed and the cause remanded for such further proceedings as are proper.