OWENS ILLINOIS, INC., Forest
Products Division and The Aetna
Casualty and Surety Company

v.

Terry Allen LANE.

Supreme Court of Tennessee.

Dec. 27, 1978.

Mayo L. Mashburn, Eddie L. Headrick,
Bell, Painter, McMurray, Callaway, Brown
& Mashburn, Cleveland, for appellants.

R. Jerome Shepherd, Colloms, Banks &
Shepherd, Cleveland, for appellee.

## OPINION

FONES, Justice.

Defendants, employer and its workmen's
compensation insurer, appeal from the trial
court's award of benefits that included a
ten percent permanent partial disability to
employee's foot. Defendants challenge the
competency of the medical evidence, con-
sisting solely of the deposition of Dr. Gary

McAllister, relied upon in finding the permanent partial disability. The only issue is whether the physician's testimony on the question of permanence attained the degree of certainty sufficient to sustain an award of permanent disability.

Plaintiff was working as a material handler at the time of his injury on June 21, 1977. He was engaged in setting boxes on a moving track that was about eighteen inches in height. He testified that he leaned forward and somehow caught his foot on a piece of metal hanging down from the track; that in extracting his foot to avoid injury from the moving track he fell backwards and "could feel a bop in the back of my heel." He went to Dr. Jones on the 23rd day of June and he said his foot would be alright. He then went to Dr. Johnson, who referred him to Dr. McAllister, an orthopedic surgeon. Doctor McAllister examined him on June 28, 1977, and found that he had a small non-displaced fracture of carpal bone and a non-displaced fracture in the right heel bone, or the oscaleus. A short leg cast was applied on that date, removed on August 8, 1977, and on August 28 employee was able to return to work, according to Dr. McAllister.

In his deposition, Dr. McAllister at first testified that based on the American Medical Association green rating book, plaintiff suffered a disability of "about 10 percent to his heel or to the foot or something." On cross-examination, however, when asked whether the disability was permanent within a reasonable degree of medical certainty, Dr. McAllister responded, "Well, it's just a possibility." Further, when questioned as to the chances that the plaintiff would have a permanent disability, Dr. McAllister replied that there was a forty percent chance that he would and a sixty percent chance that he would not have a permanent disability.

There are a number of Tennessee cases that discuss the question of the degree of certainty of medical testimony required to establish a causal connection between a physical impairment or injury and a compensable accident. *See, e. g., Lynch v. LaRue,* 198 Tenn. 101, 278 S.W.2d 85 (1955); *P*

*& L Const. Co., Inc. v. Lankford,* 559 S.W.2d 793 (Tenn.1978); *Cas Walker's Cash Stores, Inc. v. Livesay,* 215 Tenn. 306, 385 S.W.2d 745 (1965); *Central Motor Express, Inc. v. Burney,* 214 Tenn. 118, 377 S.W.2d 947 (1964); *Laughlin Clinic, Inc. v. Henley,* 208 Tenn. 252, 345 S.W.2d 675 (1961); *Mason & Dixon Lines, Inc. v. Gregory,* 206 Tenn. 525, 334 S.W.2d 939 (1960); *Morrison v. James,* 201 Tenn. 243, 298 S.W.2d 714 (1957); *Great American Indem. Co. v. Friddell,* 198 Tenn. 360, 280 S.W.2d 908 (1955).

In "causal connection" cases, facts and circumstances revealed by lay testimony may often have relevancy upon the ultimate determination of that issue, and therefore it is not exclusively within the realm of medical science. *See Lynch v. LaRue, supra,* and *P & L Const. Co., Inc. v. Lankford, supra.* In *Lynch* the Court held that medical testimony that cerebrovascular disease "could have been" caused by an electric shock was not legally sufficient, although it may be used in conjunction with other evidence. In *Lankford,* Mr. Justice Cooper restated the *Lynch* rule as follows:

"In a workmen's compensation case, a trial judge may properly predicate an award on medical testimony to the effect that a given incident 'could be' the cause of the plaintiff's injury, when he also has before him lay testimony from which it may reasonably be inferred that the incident was in fact the cause of the injury." *P & L Const. Co., Inc. v. Lankford, supra* at 794.

There is a comprehensive annotation in 135 A.L.R. 516 (1941) entitled "Sufficiency of expert evidence to establish causal relation between accident and physical condition or death." The cases cited support the conclusion that medical testimony as to the *possibility* of a causal connection between an accident or subsequent death or impaired physical condition will not support a finding of such relationship. Expressions such as "might have", "may have" or "could have" are classified as being in the "possibility" category. But, the *likelihood* or *probability* of a causal connection has been held sufficient in some jurisdictions, and rejected in others. This category includes expressions such as "probably", "likely" and "apt." The

expressions that find general acceptance as sufficient to establish causal connection in most jurisdictions are, "to a reasonable certainty" or "to a reasonable medical certainty." *See* Annot., 135 A.L.R. 541 *et seq.* and cases cited therein.

■ The determination of the issue of permanency of all but the most obvious injuries, such as loss of a member, is peculiarly within the realm of scientific knowledge. Thus, an award of permanent partial disability for an injury such as plaintiff Lane sustained must be supported by expert medical testimony that the resulting condition is permanent. *See Bishop Baking v. Forgey,* 538 S.W.2d 602 (Tenn.1976) and *Floyd v. Tennessee Dickel Distilling Co.,* 225 Tenn. 65, 463 S.W.2d 684 (1971).

■ The plaintiff in a workmen's compensation suit, and all civil actions generally, has the burden of proving his case "in all its parts" by a preponderance of the evidence. *E. g., Milstead v. Kaylor,* 186 Tenn. 642, 212 S.W.2d 610 (1948). It necessarily follows that a plaintiff must establish the permanency of his disability by a preponderance of the evidence which must be accomplished through expert medical testimony. *A fortiori,* any expert medical witness presented must give testimony that preponderates in favor of permanency to qualify as having probative value on that issue. In short, the medical witness, in expressing his opinion, must use language that means that the medical factors that indicate permanency of disability outweigh those to the contrary.

In *Maryland Casualty Co. v. Young,* 211 Tenn. 1, 362 S.W.2d 241 (1962), the employee had been scalped from the eyebrows back to the center of the top of his head. Doctor Pearce's testimony to support permanency, awarded by the trial judge, was qualified as follows: (1) "Very possibly . . . but I couldn't tell you that, and nobody else can." (2) "I can't say whether it will or won't, it would be more subject to it, there is more of a possibility of it." (3) "[Q.] Could or might it ulcerate?" "A. Certainly." Chief Justice Dyer, writing for the Court evaluated Dr. Pearce's testimony as follows:

"This evidence amounts to saying it might or it might not. Such is conjecture and at best would support only a likelihood or possibility of these things every happening." 362 S.W.2d at 243.

■ Doctor McAllister's testimony that it was "just a possibility" and that chances were forty percent for and sixty percent against permanency clearly fails to preponderate in favor of permanency.

The judgment of the trial court awarding ten percent permanent partial disability to the foot is reversed. Costs are adjudged against plaintiff.

HENRY, C. J., and COOPER, BROCK and HARBISON, JJ., concur.

## OPINION ON PETITION TO REHEAR

FONES, Justice.

In an earnest and respectful petition to rehear Plaintiff, Lane, contends that we overlooked his testimony and that of his wife to the effect that he still had pain in his foot at the time of the trial; that continued pain, five months after "all transient tendonitis" ceased, points to a "permanent problem" with his heel; that this lay testimony, plus the medical testimony of a forty (40%) percent probability of permanency, is sufficient to support the trial judge's award.

Plaintiff asserts that *P & L Const. Co., Inc. v. Lankford, supra,* squarely authorizes such consideration of lay testimony.

The issue under examination in *Lankford* was whether a causal connection existed between the compensable accident and the resulting injury. The issue here is whether plaintiff's compensable injury is permanent in duration. For the most part, the equivocal language used by medical experts has appeared in cases involving the issue of causal connection rather than permanency, and that is the reason those cases were included in the opinion. A careful reading of the opinion will reflect that we made the point that lay testimony is often relevant upon the issue of causal connection but that the issue of permanency (except for the most obvious injuries such as loss of a mem-

ber) must be established by expert medical testimony, being exclusively within the realm of medical science.

 For additional clarity, perhaps, it is well to restate the rule that once permanency of an injury is established by expert medical testimony, lay testimony becomes relevant on the issue of the *extent* of the compensable disability award. That is true because the extent of disability includes a consideration of factors not exclusively within the realm of medical science, together with the anatomical disability that is the province of experts. *See Employers Ins. Co. of Ala. v. Heath*, 536 S.W.2d 341 (Tenn. 1976). The petition to rehear is denied.

HENRY, C. J., and COOPER, BROCK and HARBISON, JJ., concur.