Kenneth O. PATTERSON, Appellant,

v.

TUCKER STEEL COMPANY, Appellee.

Supreme Court of Tennessee.

Aug. 6, 1979.

Daniel J. Goodman, Knoxville, for appellant.

John W. Baker, Jr., Knoxville, for appellee.

OPINION

HENRY, Justice.

Appellant Kenneth Patterson filed this worker's compensation claim alleging that his employment as a welder for appellee Tucker Steel resulted in a disabling lung disease. The trial court, after excluding certain portions of Dr. Haraf's testimony on behalf of Mr. Patterson, dismissed the action for failure to prove that the lung condition was employment-related. Patterson claims that the court erred in excluding this testimony, which would have justified an award in his favor. We affirm the dismissal of the action.

I.

Mr. Patterson was employed by Tucker Steel on January 25, 1972, and worked as a welder from February 19, 1973 until April 10, 1975. He ceased working because of shortness of breath and lack of stamina. Although his doctors state that he could do sedentary work, Patterson has been employed as a laborer all his life and has not been able to do such work since leaving Tucker Steel. The three physicians that testified by deposition all agreed that Patterson has a chronic lung condition that impairs his ability to work. They differed, however, over whether the condition was caused by his work as a welder or by smoking less than one pack of cigarettes a day for the past twenty-two years.

Dr. Swann, a pulmonary surgeon, who testified on behalf of Patterson, stated that "the only cause I can find for his present problem is his occupational exposure during the course of working as a welder." Dr. Hudson, a pulmonary specialist testifying on behalf of Tucker Steel, disagreed that Patterson had "welder's lung" or that his exposure as a welder caused the impairment:

Q. Doctor, do you have an opinion, based upon a reasonable degree of medical certainty, and when I say that I mean more likely than not, as to whether or not Mr. Patterson has welder's lung?

\* \* \* \* \* \*

A. Well, when you say welder's lung, you mean there is the possibility of a shadow cast by iron oxide. I can't exclude that possibility but I don't believe he has any significant functional impairment due to his two or three year exposure of welding at Tucker Steel.

\* \* \* \* \* \*

A. . . . I think that in all probability his pulmonary disability comes from his years of cigarette smoking.

The testimony excluded by the trial court was given by Dr. Haraf on behalf of Mr. Patterson. Dr. Haraf was qualified as a hematologist and an oncologist, and specifically stated during the deposition that he was not an expert in the area of lung diseases resulting from toxic fumes. His diagnosis, contained in a letter to Mr. Patterson, noted "pulmonary lung scarring of a chronic nature, consistent with chronic lung disease, possibly relating from smoking in addition to possible lung damage from work as a welder." This letter was introduced into evidence at the outset of Dr. Haraf's testimony without objection. At trial, the court sustained several objections and struck those portions of Dr. Haraf's testimony in which he stated that the lung condition "possibly" was related to Patterson's exposure as a welder.

Appellee Tucker Steel claims that even if the Judge erred in striking the testimony, the error was harmless because Dr. Haraf's letter, which contained the same analysis, was introduced without objection.

Appellee also relies on other proof as providing material evidence to support the action of the trial court. Evidence was presented indicating that the welding machine Patterson principally used produced no fumes. In addition, Dr. Swann acknowledged a latency period before abnormalities appear on an x-ray, and Dr. Hudson stated that the latency period was "in almost all cases a minimum of ten years."

## II.

There are a number of Tennessee decisions discussing the degree of medical certainty required to establish a causal connection between a physical impairment and employment conditions. These cases most recently were reviewed in *Owens Illinois, Inc. v. Lane*, 576 S.W.2d 348 (Tenn.1978), in which Justice Fones stated that:

> medical testimony as to the *possibility* of a causal connection between an accident or subsequent death or impaired physical condition will not support a finding of such relationship. Expressions such as "might have", "may have" or "could have" are classified as being in the "possibility" category. But, the *likelihood* or *probability* of a causal connection has been held sufficient in some jurisdictions, and rejected in others. This category includes such expressions such as "probably", "likely" and "apt." The expressions that find general acceptance as sufficient to establish causal connection in most jurisdictions are, "to a reasonable certainty" or "to a reasonable medical certainty." See Annot., 135 A.L.R. 541 *et seq.* and cases cited therein. (emphasis in original) 576 S.W.2d at 349–50.

The Court also quoted the following language from *P&L Const. Co., Inc. v. Lankford*, 559 S.W.2d 793, 794 (Tenn.1978):

> In a workmen's compensation case, a trial judge may properly predicate an award on medical testimony to the effect that a given incident 'could be' the cause of the plaintiff's injury, when he also has before him lay testimony from which it may reasonably be inferred that the incident was in fact the cause of the injury. 576 S.W.2d at 349.

The issue presented in *Owens Illinois* was whether equivocal medical testimony on the permanency of the employee's injury would support an award. Thus, the discussion of causal connection cases was included to provide an analogy, as pointed out in the opinion on petition to rehear.

For the most part, the equivocal language used by medical experts has appeared in cases involving the issue of causal connection rather than permanency, and that is the reason those cases were included in the opinion. 576 S.W.2d at 550.

Although the *Owens Illinois* discussion of causal connection cases was dictum, it accurately reflects the law relating to equivocal medical testimony establishing a causal connection between physical impairment and employment. It is thus apparent that such equivocal medical testimony is admissible in this context. However, whether such statements are sufficient to support a finding of causal connection depends upon whether there is additional material lay testimony supporting the conclusion that the injury was employment related. *P&L Constr. Co., Inc. v. Lankford, supra.*

### III.

Under the circumstances presented in this case, however, the exclusion of those equivocal portions of Dr. Haraf's testimony was harmless error. As shown by Dr. Haraf's statements on direct examination, he was not an expert in this area of diagnosis and had little or no familiarity with the condition known as welder's lung:

A. I am aware of the term welder's lung from previous training. I have never made that diagnosis before. I am aware that such an entity exists and could be a possible cause of his disease. And this is why I brought it up to him and included that comment in my record as a possible cause for what appears to be in the x-ray changes in his lung. As far as the exact mechanism and things of this nature, I did not have any detailed knowledge of that. Again, reading any recent articles on it within the last four years, I have not.

\* \* \* \* \* \*

I don't personally recall ever reading any articles, in reading what is generally referred to as internal medicine textbooks, they refer to such things as exposure to toxic fumes as causing lung dam-age; and vaguely from my training, I remember the term welder's lung.

\* \* \* \* \* \*

I am suspect that this is still a valid diagnosis. I don't know. I am not an expert in this area.

Secondly, the erroneously excluded evidence actually was before the Court in Dr. Haraf's letter, which was introduced without objection. This letter attributed Patterson's lung condition possibly to smoking "in addition to possible lung damage from work as a welder." Finally, there was other material evidence to support the action of the trial court. Dr. Hudson's diagnosis, as well as testimony concerning the absence of toxic fumes, provides material evidence to support the finding of the trial court. Although Mr. Patterson stated that the Dart welding process produced fumes, this was contradicted by other lay testimony and never proved by an expert.

For these reasons, we hold that the exclusion of the equivocal portions of Dr. Haraf's testimony was harmless error. The judgment of the trial court is affirmed.

BROCK, C. J., and FONES, COOPER and HARBISON, JJ., concur.