**Blanche RIDDLEBARGER,
Plaintiff-Appellant.**

v.

**The PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
Defendant-Appellee.**

Supreme Court of Tennessee.

April 13, 1981.

Ralph H. Noe, Jr., Edward R. Sempkow-ski, Morristown, for plaintiff-appellant.

W. Kyle Carpenter, W. Morris Kizer, Knoxville, for defendant-appellee.

## OPINION

BROCK, Justice.

This is an action to recover accidental death benefits provided by a life insurance policy. The trial judge approved the verdict of the jury in favor of the plaintiff and against the defendant for $20,000.00 accidental death benefits but the Court of Appeals reversed and directed a verdict for the defendant on the ground that plaintiff had failed to prove that death resulted from accidental means.

While picking blackberries near his home on June 21, 1977, the insured was stung by three black hornets. He was highly allergic to such stings and soon collapsed, becoming numb from the waist down. He was taken to a nearby hospital where it was observed that he had swelling of the tongue, a very dry mouth, nausea, and chest pain. The attending physician determined that he was suffering from a myocardial infarction, his first such attack. The insured responded to treatment in the intensive care unit until June 27, at which time it was decided that his condition had become stabilized and that he could be moved to another room out of the intensive care unit. Shortly after his move to another room, however, he developed a severe headache above one eye and died within two hours thereafter from a "stroke."

The pertinent policy provisions were as follows:

"*Conditions for benefit*: All of the following . . .

"(1) The employee sustained an accidental bodily injury while a covered individual.

"(2) The injury, directly and independently of all other causes, resulted in the loss.

"(3) The loss occurred within ninety (90) days after the injury was sustained.

\* \* \* \* \* \*

"*Conditions not covered*: Any loss which results . . .

\* \* \* \* \* \*

"(2) Directly or indirectly from bodily or mental infirmity or disease or medical or surgical treatment thereof, ...."

The proof disclosed that the insured was 56 years of age when he died and had a history of allergy to the stings of bees and such insects and had suffered a severe reaction from bee stings about a year prior to this incident. He also suffered from diabetes and hypertension although these problems were medically under control. Even though he had no heart attack history, his electrocardiogram was to some extent abnormal. He also suffered from recurring headaches caused by histamine cephalagia.

Before undertaking to assess the evidence in the record to determine whether it supports the verdict of the jury approved by the trial judge, we remind ourselves and the Court of Appeals again of the settled principles governing review of jury verdicts by appellate courts in this state which were set out in *Crabtree Masonry Company v. C & R Construction Co., Inc.*, Tenn., 575 S.W.2d 4 (1978), affirmed again in *Pullins v. Fentress County General Hospital, Etc.*, Tenn., 594 S.W.2d 663, 665 (1980), as follows:

"It is the time honored rule in this state that in reviewing a judgment based upon a jury verdict the appellate courts are not at liberty to weigh the evidence to decide where the preponderance lies, but are limited to determining whether there is material evidence to support the verdict; and in determining whether there is material evidence to support the verdict, the appellate court is required to take the strongest legitimate view of all of the evidence in favor of the verdict, to assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and to discard all to the contrary. Having thus examined the record, if there be any material evidence to support the verdict, it must be affirmed; it it were otherwise, the parties would be deprived of their constitutional right to trial by jury." 575 S.W.2d at 5.

The Court of Appeals affirmed the findings of the trial court that the hornet stings were accidental and that the stings caused the insured to suffer a myocardial infarction, and that the immediate primary cause of death was a cerebral vascular accident, or "stroke". However, that court was of the opinion that the evidence did not support a conclusion that the bee stings or the myocardial infarction brought about the cerebral vascular accident and death.

We disagree with this latter conclusion of the Court of Appeals and, assessing the evidence in accordance with the above quoted principles for appellate review of a jury verdict, we find that the evidence does indeed support the jury's finding that death resulted from the accidental hornet stings.

After having testified that the hornet stings caused the insured's myocardial infarction and that the immediate cause of death of the insured was a cerebral vascular accident, Dr. Allum, who testified as the plaintiff's medical expert, gave the following significant testimony:

"Q. Well insofar as his condition that existed from the time of admission to the hospital on 6/21/77 up to the time he was removed from ICU out to a regular room or on the floor or however you want to describe it can you tell us how, if at all, those conditions would relate to a stroke?

"A. I think there is an association between certainly myocardial infarction and strokes from several different mechanisms, one of which would be any interruption in blood flow to the brain due to a fall in blood pressure or an upset in heart rhythm that might occur in the course of the myocardial infarction convalescence. To my knowledge and recollection after the atrialfibrillation was corrected he did not have a significant blood pressure problem, either high or low, and required no medication for that. Certainly the blood pressure ran low in the early hours when the rhythm disturbance was there and the myo-

cardial infarction was fresh. In fact he required some medication to support it for a period of hours. When you have atrialfibrillation that means the chambers of the heart are out of synchrony with each other, and the upper chamber called the atrium quivers rather than beating forcefully. It is pretty commonly established that one of the potential complications of that situation are little blood clots forming in the nooks and crannies of the atrium, for lack of better terminology, such that they are lurking there and can be launched out at any time. It is possible that this was the cause of the subsequent problem, in that one of these little clots lurking about then got thrown forward. The other possibility is that when you have a myocardial infarction you have a raw area which on the inner lining of the heart called the endocardium and often clot substances cling to that area. These also can fragment and be thrown out in the circulation, and if they happen to then move up the carotid or basilar vertebral circulation toward the brain can occlude it very dramatically; so these are all possible mechanisms of how this could have followed."

We interpret the doctor's testimony to mean that the immediate cause of death was a "stroke" which was the result of the myocardial infarction. In other parts of his testimony he clearly established that the myocardial infarction was caused by the hornet stings. Taking all of this together, the jury was justified in concluding that the death of the insured, directly and independently of all other causes, was caused by the accidental hornet stings.

The Court of Appeals cited our opinion in *Owens Illinois, Inc. v. Lane,* Tenn., 576 S.W.2d 348 (1978) to support its conclusion that the evidence in the instant case did not support the verdict. *Lane* was a workmen's compensation case in which the medical expert testified that there was a 40% chance that the employee would have a permanent disability and a 60% chance that he would not have such a disability. We held, of course, that such testimony preponderated against a finding of permanent disability. In our view, the *Lane* case is not in point. Here, the medical expert witness, when asked to state how, if at all, the insured's condition from the time of his admission to the hospital on June 21, 1977, up to the time he was removed from the intensive care unit related to the stroke, testified positively that "I think there is an association between, certainly, myocardial infarction and stroke from several different mechanisms . . . ." and then proceeds to relate those mechanisms. We hold that such testimony met the standard of certainty for expert opinions to support a finding in this case. *American Insurance Co. v. Ison,* Tenn., 538 S.W.2d 382 (1976); 31 Am.Jur.2d *Expert and Opinion Evidence* § 185 (1967).

Accordingly, the judgment of the Court of Appeals is reversed and the judgment of the trial court reinstated and affirmed. Costs incurred upon appeal are assessed against the defendant insurance company.

HARBISON, C. J., and FONES and COOPER, JJ., concur.