**William D. GRIFFIN, Plaintiff/Appellee,**

v.

**MEMPHIS COMMUNITY TELEVISION FOUNDATION, Defendant/Appellant.**

Supreme Court of Tennessee, at Jackson.

March 28, 1988.

Gerald F. Easter, Robert L.J. Spence, Memphis, for defendant/appellant.

Leonard E. Van Eaton, Memphis, for plaintiff/appellee.

OPINION

O'BRIEN, Justice.

In this case the employer has appealed from an award of permanent partial disability under the Workers' Compensation Act. The trial judge found that the employee had sustained twenty percent (20%) permanent partial disability to his body as a whole as the result of an injury sustained on 6 March 1981.

This cause of action accrued prior to 1 July 1985, the effective date of Chapter 393 of the Public Acts of 1985, amending TCA § 50-6-225(e). Appellate review is under the material evidence standard. *Alley v. Consolidation Coal Company,* 699 S.W.2d 147, 148 (Tenn.1985).

One issue is raised on this appeal. Appellant insists the trial court committed reversible error in its finding that the appellee sustained a twenty percent (20%) permanent partial disability to the body as a whole in the absence of supporting expert medical testimony.

A summary of the circumstances and testimony is essential to the decision in this case. William Griffin had been employed as a custodian by Memphis Community Television Foundation from November 1969 until 6 March 1981, the date of his injury. His duties included running errands and picking up and delivering orders, which sometimes involved objects of considerable weight. On the day in question he was requested to carry a TV monitor to a sta-

tion wagon. Because of the fragile nature of the equipment it was necessary for him to carry it physically for approximately 150 feet to the vehicle. He estimated the weight of the monitor to be approximately one hundred (100) pounds. Immediately after depositing the instrument in the station wagon he felt a pain in his right shoulder and neck. He reported the incident to his office manager who made an appointment for him with Dr. Henry T. Stratton, an orthopedic surgeon. The injury occurred on Friday and he reported to Dr. Stratton on Monday.

Dr. Stratton testified by deposition that he made a physical and radiographic examination involving x-rays. He determined that appellee had a mild degeneration of the C–6 cervical disc space with superimposed neck strain. Mr. Griffin was treated conservatively with heat, analgesic medications and muscle relaxants and observed periodically. His symptoms continued and on 4 May 1981 the doctor concluded he could return to work if he did not have to lift any weight over twenty (20) pounds. The patient told him he had been notified he had been replaced. An electromyogram was ordered to rule out the possibility of a pinched nerve or neurological abnormality and recorded negative. The doctor advised the patient at that time that he would have to live with his residual symptoms and continue on conservative measures in the form of heat and aspirin. He expressed the opinion on 18 May 1981 that there was no permanent partial physical impairment as a result of the injury sustained on 6 March and that Mr. Griffin could return to work if appropriate work was available. On 4 June 1981 the patient reported that he had tried to return to work about a week before but was unable to tolerate it.

Dr. Stratton further expressed the opinion that the muscular strain sustained by Mr. Griffin probably aggravated his pre-existing degenerative disc condition and would affect his ability to do manual labor to a degree. He stated that he made no attempt to separate the degenerated disc from the superimposed cervical strain in placing a weight lift limitation on Mr. Griffin. He presumed that the cervical strain would eventually subside but if his initial symptoms were brought on by lifting it seemed reasonable to him for the patient to continue working but stop lifting.

Mr. Griffin testified that at the doctor's suggestion, and abiding by his counsel, he endeavored to return to work. The office manager informed him they had looked on his record and found he was no longer employed. In October, some several months later, he received a separation notice containing the notation that he was discharged because he was physically unable to continue work. He further testified that on 15 July 1985, the date of the hearing, he had continued to follow the treatment recommended by Dr. Stratton but still suffered periodic pain which became more severe with lifting. He was not able to work more than two or three hours at a time. He was presently working for minimum wage at a part time job.

His wife testified they had been married for twenty-four (24) years and during all of that time he had worked regularly. Since the date of his injury he had not been able to lift much and was not physically able to accomplish things he had been able to do before.

The appellant concedes that Mr. Griffin suffered a compensable injury. It is insisted he did not establish he had sustained a permanent disability by competent expert medical testimony in accordance with the requirement stated in *Floyd v. Tennessee Dickel Distilling Company*, 463 S.W.2d 684, 225 Tenn. 65 (1971).

Dr. Stratton's testimony was ambiguous. He said on one hand that the injury sustained by Mr. Griffin would affect his ability to do manual labor to a degree and that he could return to work if he did not have to lift over twenty (20) pounds. He also opined that on 19 May 1981 there was no permanent partial physical impairment as a result of the injuries Mr. Griffin sustained. He went on to state he should limit his weight lifting activities to what he could tolerate.

In the *Tennessee Dickel* case the employee, Evelyn Floyd, suffered a back injury.

The trial court awarded twenty-five percent (25%) permanent partial disability based on her testimony alone. This Court held that Mrs. Floyd was competent to testify with respect to her own physical condition and disability and that there was material evidence in the record to support findings of both temporary total and residual partial disability, but in the absence of expert medical testimony with respect to permanence the award of permanent partial disability benefits could not be sustained. The case was remanded for proof on the issue of permanence of her disability.

We do not find those circumstances to exist in this case. While Dr. Stratton declined to fix any percentage of permanent disability we believe permanence was established by his advice to his patient that he would have to live with his residual symptoms and the limitation he placed on Griffin's weight-lifting to objects weighing twenty (20) pounds or less. However equivocal the medical testimony may have been on the issue of permanence we think that fact has been substantially supported by the length of time Mr. Griffin's disability has endured. This injury occurred in 1981. The reason for delay in asserting his workers' compensation claim is not explained in this record, however the case did not come to trial until July in 1986, more than five (5) years later. According to all the evidence in the record Mr. Griffin was still suffering from his injury on that date.

The trial court found that defendant was a 68 year old man with limited education who had performed his job with the appellant for twelve (12) years without incident, and that he sustained an injury and disability within the meaning of the Tennessee Workers' Compensation Act. He further found the medical evidence to be that Mr. Griffin could return to work in a limited capacity but the employer discharged him because he was physically unable to continue at his employment. He found that he had sustained at twenty percent (20%) permanent partial disability to his body as a whole.

We find material evidence in the record to sustain the finding of the trial court that Mr. Griffin was permanently and partially disabled by the reason of his injury. In *Hinson v. Wal–Mart Stores, Inc.*, 654 S.W. 2d 675, 677 (Tenn.1983) this Court stated the law applicable in this case:

"... In considering this issue it must be kept in mind that this Court makes a clear distinction in worker's compensation cases between anatomical impairment as determined by a physician and disability to work which results from such impairment. *Federated Mut. Implement & Hardware Ins. Co. v. Cameron*, 220 Tenn. 636, 422 S.W.2d 427 (1967). In *Cameron* this Court recognized that in determining what may constitute permanent and total disability many pertinent factors should be considered, including the skills, education and training of the employee as well as job opportunities and other factors bearing upon employability. In determining the sufficiency of the evidence to support a finding of disability under the act, once permanency and causation are established by medical testimony, as has been done in the instant case, the extent of such disability may be determined from lay testimony and from other evidence as well as from medical evidence. *Kellwood Co. v. Gibson*, 581 S.W.2d 645 (Tenn.1979)."

The appellee is entitled to a determination of the extent of his disability based on all the evidence, both expert and non-expert. The judgment of the trial court is affirmed at appellant's cost.

HARBISON, C.J., and COOPER and DROWOTA, JJ., concur.

FONES, J., dissents.

FONES, Justice, dissenting.

I respectfully dissent.

The medical testimony in this case was inadequate to support an award of permanent partial disability.

Heretofore the rule as stated in *Owens Illinois, Inc. v. Lane*, 576 S.W.2d 348 (Tenn.1978), has been followed without exception:

The determination of the issue of permanency of all but the most obvious inju-

ries, such as loss of a member, is peculiarly within the realm of scientific knowledge. Thus, an award of permanent partial disability for an injury such as plaintiff Lane sustained must be supported by expert medical testimony that the resulting condition is permanent. *See Bishop Baking v. Forgey*, 538 S.W. 2d 602 (Tenn.1976) and *Floyd v. Tennessee Dickel Distilling Co.*, 225 Tenn. 65, 463 S.W.2d 684 (1971).

576 S.W.2d at 350.

On direct examination Dr. Stratton was asked to explain why he did not find that plaintiff had any degree of permanent partial disability, in light of the lifting restriction he recommended. The questions and answers were as follows:

Q. Well, my question is if the man has no disability, why would he have any restrictions as to what he lifted?

A. Well, initially he injured his neck, I presumed, that this was an injury on March 6, 1981, when he lifted or picked up a video cassette recorder. It would make sense to me not to do that again or limit his activities as to what he could tolerate.

Q. You do not consider that any disability?

A. No.

On cross examination, that inquiry was pursued as follows:

Q. All right, sir. If I understand you correctly, the basis of your testimony is that the weight limitation that you have placed on him is a result of that degenerated disc space and not at all the result of his having lifted this video cassette recorder?

A. I made no attempt to separate the two. To me this man had a degenerated disc with a superimposed cervical strain. Cervical strains or muscular strains are transient things, and I would presume that this would eventually subside. If his initial symptoms were brought on by lifting something, why not stop lifting but continue working, just seems reasonable to me.

Dr. Stratton's examinations on 4 May and 18 May, 1981, and the electromyogram that he ordered performed on plaintiff ruled out any neurological abnormality or pinched nerve or any other condition other than the degenerated cervical disc. The doctor saw plaintiff for the last time on 4 June 1981, at which time he testified that plaintiff told him he had tried to return to work but could not "tolerate it." Dr. Stratton testified that since he had no further suggestions as to treatment, other than heat and aspirin, he discharged the patient from his care.

It is clear from Dr. Stratton's testimony that he does not regard the cervical strain as a permanent injury because it is a transient thing. But he also found that plaintiff had a degenerated cervical disc at the C–6 interspace. While Dr. Stratton did not directly describe that degeneration as arthritic, he testified that he prescribed clinoril, which he described as an anti-arthritic medication, and at a later visit he renewed that prescription.

It is equally clear that Dr. Stratton's "recommendation" as he described it in a letter to the employer's lawyer, was based on the assumption that if you received a cervical sprain from the combination of a congenital cervical disc condition and lifting a video cassette recorder, it may happen again, so why not try to avoid it, a non-scientific opinion.

The disability that plaintiff has is a congenital arthritic degeneration of a cervical disc that Dr. Stratton has refused to attribute to plaintiff's work injury of 6 March 1981 and has refused to assign a degree of permanent impartial impairment. In those circumstances, no court in this State is authorized to award plaintiff a degree of permanent partial disability, under the case law that existed prior to the release of the majority opinion herein.