

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

FILED

September 29, 2015

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 2:04 P.M.

| | | |
|---|---|---|
| Luther Buchanan | ) | Docket No. 2015-01-0012 |
| | ) | |
| v. | ) | |
| | ) | State File No. 22925-2015 |
| Carlex Glass Co. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Audrey A. Headrick, Judge | ) | |

---

## Reversed and Remanded – Filed September 29, 2015

---

In this interlocutory appeal, the employee alleges he sustained an injury to his right knee while changing a paint screen at work. The employer denied the claim, asserting that the alleged accident did not occur. In its Order Granting Medical Benefits, the trial court concluded that the employee sustained a work injury and further determined that the employee came forward with sufficient evidence from which the court could conclude that he is likely to prevail at a hearing on the merits. The employer has appealed, arguing the evidence preponderates against the trial court's determinations. Having carefully reviewed the record, we reverse the decision of the trial court and remand the case for further proceedings as may be necessary.

Judge Timothy W. Conner delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge David F. Hensley joined.

T. Joseph Lynch, Knoxville, Tennessee, for the employer-appellant, Carlex Glass Co.

Luther Buchanan, Madisonville, Tennessee, pro se

1

## Factual and Procedural Background

Luther Buchanan ("Employee"), a fifty-five-year-old resident of Monroe County, Tennessee, works for Carlex Glass Company ("Employer") as a production technician. In late February or early March 2015, Employee was placed in the "paint room" where he was undergoing training at the time of the alleged injury. The paint room contains several machines that are surrounded by elevated platforms accessed by staircases on each side of the machines. Employee reported that while changing a paint screen on the top of a machine in the early morning hours of March 13, 2015, he stood up and turned, catching his right foot or ankle on the "table top." He stated that he felt something pull in his knee.

When Employee reported the incident to his supervisor on or about March 18, 2015, he stated that the incident occurred at approximately 6:00 a.m. on the morning of March 13. He reiterated this to a representative of Employer's workers' compensation insurer. He further stated in an affidavit accompanying his Request for Expedited Hearing that the incident occurred "about 6:00 AM." Once production reports and surveillance video were reviewed, which reflected that Employee did not participate in a screen change around 6:00 a.m., Employee asserted that the injury occurred during a screen change at approximately 3:00 a.m. In response, Employer provided video surveillance of the 3:00 a.m. screen change, which did not reveal a noticeable accident.

Employee was evaluated by Dr. Bryan Thompson on March 25, 2015. In the report from that visit, under "Patient's Description of Problem," the provider noted that "Luther states, on 3/13/2015, he was changing a screen in the paint room, and his foot was stuck between the table top on the cat-walk and suddenly felt some pain in his right knee."

Employer denied the claim and asserted there was no evidence of a work-related injury. Employee filed a Petition for Benefit Determination seeking an order compelling Employer to provide medical benefits. Following unsuccessful mediation efforts, Employee timely filed a Request for Expedited Hearing.

Following the expedited hearing, at which Employee and three company representatives testified, the trial court entered an order granting medical benefits. The trial court determined that the video surveillance was entitled to little weight and that Employee's confusion regarding when the alleged accident occurred represented a minor discrepancy that did not discredit his testimony. Employer timely filed its notice of appeal, and the record was received by the Clerk of the Appeals Board on Monday, September 21, 2015.

2

## Standard of Review

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless the rights of any party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)     Violate constitutional or statutory provisions;

(B)     Exceed the statutory authority of the workers' compensation judge;

(C)     Do not comply with lawful procedure;

(D)     Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion;

(E)     Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

### *Burden of Proof*

An employee bears the burden of proof for all prima facie elements of a workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2014); *see also Owens Ill., Inc. v. Lane*, 576 S.W.2d 348, 350 (Tenn. 1978). In the Order Granting Medical Benefits, the trial court determined that "the requirement that an employee must show by a preponderance of the evidence that the employment contributed more than 50% to the injury *has yet to attach at this interlocutory stage of the proceedings*." (Emphasis in original). While we agree that an employee need not prove his or her claim by a preponderance of the evidence at an expedited hearing to obtain temporary disability or medical benefits, an employee nevertheless has the burden to come forward with sufficient evidence of an injury by accident from which the court can conclude that he or she is likely to prevail at a hearing on the merits, consistent with Tennessee Code Annotated section 50-6-239(d)(1). *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

Thus, an injured worker retains the burden of proof at all stages of a workers' compensation claim. At an expedited hearing, a trial court may grant relief if the court is

3

satisfied that an employee has met the burden of showing that he or she is likely prevail at a hearing on the merits. This lesser evidentiary standard, embodied in section 50-6-239(d)(1), does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a "preponderance of the evidence."

*Proof of Injury*

The Tennessee Workers' Compensation Law provides, "every employer and employee subject to this chapter, shall, respectively, pay and accept compensation for personal injury or death by accident arising primarily out of and in the course and scope of employment . . . ." Tenn. Code Ann. § 50-6-103(a) (2014). "An injury is 'accidental' *only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence* . . . ." Tenn. Code Ann. § 50-6-102(13)(A) (2014) (emphasis added). Thus, before addressing whether a particular medical condition was caused by an alleged "injury by accident," it is necessary to determine whether an "injury by accident" occurred in the first place. When reviewing a trial court's factual findings based upon witnesses' testimony, considerable deference must be afforded those determinations. *Kelly v. Kelly*, 445 S.W.3d 685, 693 (Tenn. 2014). However, no such deference is accorded to findings "based on documentary evidence such as depositions, transcripts, or video recordings." *Id.*

The record contains several references to Employee's description of the alleged work injury. In the Petition for Benefit Determination, Employee wrote, "while changing paint screen and setting the gap, twisted right knee." In the affidavit accompanying his Request for Expedited Hearing, he wrote, "March 13th, about 6:00 AM . . . while setting screen height, twisted my right knee, as I was standing up and turning to my left." During the expedited hearing, he testified: "And after setting . . . the table top, there's a silver part that sticks up from the rest of the paint area and as I got up to turn, then my left foot – actually my right foot caught on that. It actually pulled – I felt something pull in my knee. I didn't jump up and down or holler. I didn't fall down or roll over or nothing." On cross-examination, Employee further testified as follows:

Q. Now, when you – when you caught your foot, were you walking, were you crouching, what exactly were you doing?

A. Well, you got to bend down to set the screen so I was coming up after I had set the screen working on the screen height. I was coming up. You step – you step off of here onto there and then you step down into here . . . .

. . . .

4

Q.  What precise component of the machine did you catch your ankle on?

A.  Table top, the stainless steel part that sticks up about two inches from the actual table itself.

During cross-examination, Employee was asked about "check sheets," which document employees' work activities in incremental time periods throughout a shift. Employee admitted that the check sheets for the date in question did not show a screen change during the 6:00 a.m. time segments, but instead indicated that he changed a screen during the 3:00 a.m. time segments:

Q.  You also told us that the injury happened around six o'clock in the morning, is that correct?

A.  I think that is what I originally told him, yes.

Q,  Is that still what you think today?

A.  No, because the thing verifies it because we didn't have a screen change at six. This was a week – the following week when I brought it up to him about my knee so.

Q.  So you are changing your testimony?

A.  It could have been three o'clock hour. It could have been – I thought it could be six o'clock hour. That's a week later so.

Furthermore, Employer introduced video surveillance from the night of the injury. During cross-examination, Employee was asked about the video surveillance showing his activities during the 3:00 a.m. hour.

Q.  It showed you on there. How much time did you appear?

A.  Not very long, minutes, a few minutes at most.

Q.  Okay, does it show in that video of you, your foot being caught or your ankle or your knee twisting?

A.  I don't think that – I don't think that did.

During its case-in-chief, Employer's Health & Safety Manager discussed his review of the surveillance video from the night of the alleged injury:

Q. Okay. Is the surveillance recording that you brought with you today on zip drive a true and accurate recording of the events that occurred on March the 13th, 2015?

A. Yes.

Q. Has this computer that you brought with you, sir, been in your possession at all times since you downloaded the footage from that device?

A. Yes, it has.

Q. Okay. Have you altered the video in any manner?

A. I have not.

. . . . .

Q. What we just watched of that video was the entirety of Mr. Buchanan changing paint screens on March 13, 2015?

A. That is correct.

Q. Your view of that video was evidence that he didn't twist his knee in any way?

A. He did not.

Q. Is there any instance on that video where Mr. Buchanan had his foot and ankle caught in any way?

A. There was not.

. . . .

Q. Mr. Dickens, those videos don't have timestamps. How are you certain as to what time this occurred?

A. The video file names actually have the timestamp saved on them so when the videos are saved, it's saved in the file name of the video and so the time shows the date and the time for that particular video.

6

Q. Was Mr. Buchanan's changeover at three-thirty a.m. consistent with the log he filled out (inaudible)?

A. That is correct.

Finally, Employer introduced three affidavits, one each from Carey Best (a co-worker), George Dickens (Employer's Health & Safety Manager),[1] and Michael Selesky (Employee's supervisor). Mr. Best stated in his affidavit that Employee did not report any work injury to him on March 13, 2015. Mr. Selesky stated in his affidavit that no injuries were reported by Employee on March 12, 13, 16 or 17, 2015.

Our independent review of the surveillance video, when considered with the totality of the evidence presented to date, does not support Employee's claim that he suffered an "injury by accident" while changing the paint screen on March 13, 2015. Therefore, we find that Employee has not come forward with sufficient evidence from which the trial court could conclude that he is likely to prevail at a hearing on the merits. Employee has been unable to identify a specific incident "by time and place of occurrence" that resulted in his knee condition. While his testimony alone, absent countervailing evidence offered by Employer, could have supported an order for medical benefits, the evidence offered by Employer overcame Employee's testimony in two important respects.

First, with respect to the time of the alleged accident, Employee reported on several occasions that it had occurred at approximately 6:00 a.m. while he was changing a screen. Yet, when faced with documentation and other evidence showing that he did not change a screen at or around 6:00 a.m. on the morning of the alleged accident, Employee concluded that it "could have been" at the three o'clock hour.

Second, Employee's various descriptions of the alleged accident are contradicted by Employer's proof. Employee stated in his Petition for Benefit Determination that he "twisted right knee" while changing a paint screen. He reported to Dr. Thompson that "his foot was stuck between the table top on the cat-walk and suddenly felt some pain in his right knee." He testified during the expedited hearing that he "caught" his right foot or ankle on the table top as he was standing. However, the video surveillance introduced by Employer, which Mr. Dickens testified without contradiction showed the entirety of Employee's screen change on the night in question, showed no such incident.

The trial court concluded that the video surveillance was entitled to "little weight" because the video footage did not include a date or time stamp and because two of the machines were mislabeled on the video. However, Mr. Dickens explained both the reason for the mislabeling of the machines as well as the location of the date and time

---

[1] Mr. Dickens' affidavit was duplicative of his live testimony in all pertinent respects.

7

within the file name of the video footage. His testimony was uncontradicted. More importantly, Employee did not testify or offer any other proof that the video footage failed to depict the night in question or failed to show the specific screen change event. In fact, Employee admitted that the video surveillance did not show him catching his right foot or ankle on the tabletop or any other part of the machine.

Finally, it is clear from the medical records admitted into evidence that the "causation opinions" included in these records resulted merely from Employee's subjective description of the alleged work accident. In his March 25, 2015 report, Dr. Thompson did not offer any opinion as to whether the event described by Employee actually occurred. Instead, it appears that Dr. Thompson checked the "work related" box on the medical forms based on Employee's subjective description of the alleged event. Likewise, Dr. Cunningham's May 5, 2015 report contains no description of the alleged accident and merely reflects that Dr. Cunningham checked a box that says "is work related." These records add little to the analysis of whether Employee presented sufficient evidence that an injury by accident occurred.

In sum, if an employer denies that an alleged work accident occurred, and the injured worker chooses to seek benefits through a Request for Expedited Hearing, the employee must come forward with sufficient evidence from which a trial court can conclude that he or she is likely to prove the occurrence of an accident by a preponderance of the evidence at a hearing on the merits consistent with Tennessee Code Annotated section 50-6-239(d)(1). To satisfy that burden, an employee must offer evidence of a "specific incident, or set of incidents . . . identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A). In the present case, Employee's testimony as to the alleged occurrence was insufficient to establish that he is entitled to medical benefits in the face of substantial and uncontradicted evidence offered by Employer. Thus, we find that Employee did not meet his burden of proof at the expedited hearing.

## Conclusion

We conclude that the evidence presented to date preponderates against the determination of the trial court that Employee presented sufficient evidence from which the trial court could conclude that he is likely to prevail at a hearing on the merits. We further conclude that the trial court's decision was not supported by evidence that is both substantial and material in light of the entire record. The trial court's order is, therefore, reversed and this matter is remanded for any further proceedings as may be necessary.

Timothy W. Conner, Judge
Workers' Compensation Appeals Board

8



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Luther Buchanan | ) | Docket No. 2015-01-0012 |
| | ) | |
| v. | ) | |
| | ) | State File No. 22925-2015 |
| Carlex Glass Co. | ) | |

**FILED**

**September 29, 2015**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 2:04 P.M.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 29th day of September, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address/Mailing Address |
|---|---|---|---|---|---|---|
| **Luther Buchanan** | X | X | | | | 613 Isbill Road # 1 Madisonville, TN 37354 |
| **T. Joseph Lynch** | | | | | X | jlynch@wimberlylawson.com |
| **Audrey A. Headrick, Judge** | | | | | X | Via Electronic Mail |
| **Kenneth M. Switzer, Chief Judge** | | | | | X | Via Electronic Mail |
| **Penny Shrum, Clerk, Court of Workers' Compensation Claims** | | | | | X | Penny.Patterson-Shrum@tn.gov |

*Matthew Salyer*

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov