**Brenda Darlene HENDERSON, Appellant,**

v.

**UNITED STATES STEEL CORPORATION, Appellee.**

Supreme Court of Tennessee, at Nashville.

April 27, 1987.

Robert L. Farnette and Joyce A. McMonagle, Nashville, for appellant.

Luther E. Cantrell, Jr., Davies, Cantrell, Humphreys & McCoy, Nashville, for appellee.

### OPINION

FONES, Justice.

The trial judge dismissed this worker's compensation case on the ground that plaintiff had "failed to carry the burden of proof in regard to actual constructive or written notice ..."

Plaintiff was employed at defendant's fertilizer plant in Nashville off and on from the spring of 1978 until the spring of 1984 during which period she actually worked only a total of forty-seven weeks. Although plaintiff began as a clean up person in the plant, in the spring of 1983 she was promoted to the position of utility sewer.

Plaintiff worked on a packaging production line that was a continuous operation which began with a "bagger" opening and closing a bag under a hopper that automatically weighed out fifty pounds of fertilizer and dropped it in the bag. The filled bag then proceeded on a conveyor belt towards a machine that would sew the top of the bag shut. Before the bag reached the sewing machine plaintiff, the utility sewer, had to crimp the bag or pull the top outward and guide it into the sewing machine. The sewing machine would then sew the bag shut and automatically cut the thread. The bag of fertilizer then travelled on the conveyor belt to the point that it was loaded into trucks for transport.

Plaintiff asserts that she suffered a compensable injury under Tennessee's Worker's Compensation Statute as a result of her duties as a utility sewer. Her complaint alleged that she suffered an accidental injury on 13 April 1984, and also advanced the theory that she incurred a gradual injury to the nerves in her hands and wrists. The gradual injury theory was predicated upon her testimony that she was required to do repeated lifting of the fifty pound bags because of the malfunctioning of the conveyor belt; that the repeated lifting caused her to have carpal tunnel syndrome for which she received medical treatment and corrective surgery and has a permanent partial disability as a result of that condition.

Plaintiff testified that as early as the spring of 1983 shortly after being promoted to utility sewer, she complained of pain in her hands and arms to her supervisor, Mr. Mitchell. After being laid off in late spring of 1983, plaintiff testified that when she returned to the fertilizer plant in the spring of 1984, the pain in her hands and arms also returned; that the pain was so severe that she took two days off from work on the advice of her physician, Doctor Bell, who was treating her for rheumatoid arthritis and other conditions.

Defendant's witness, Joseph Ladd the plant manager, testified that plaintiff went to the doctor on 9 April 1984, returned with a slip from the doctor reporting that she had rheumatoid arthritis and a urinary tract infection and should be allowed to go to the bathroom as often as she wanted to. Ladd instructed plaintiff's foreman to tell plaintiff that she should take off work until her urinary infection cleared up. He testi-

fied that she did not work on the ninth or the tenth of April, 1984, but worked on the eleventh and the thirteenth and never returned to work after 13 April 1984.

Plaintiff testified that she returned to work on 19 April 1984 with a doctor's recommendation that she be placed on light duty because of her hands. According to plaintiff she presented this note to Garrett Scott who told her that there was no light duty available.

Plaintiff testified that she reported to Mr. Scott, in the mid part of May, that the doctors had told her that she had carpal tunnel syndrome and she asked him about filing a worker's compensation claim, but that Mr. Scott refused to file the claim. Plaintiff then called the Worker's Compensation Board and they advised her to get an attorney. It is undisputed that her attorneys wrote defendant on 29 June 1984, asserting a worker's compensation claim on plaintiff's behalf.

Mr. Scott acknowledged that plaintiff came to see him about making a claim for worker's compensation. His recollection was that it occurred in June 1984 and that she told him that a lawyer had advised her the company should compensate her. He responded that there was no record of an accident involving her at the plant and that the company was not liable. He made no written record of any kind of that occurrence.

The record reveals that plaintiff saw Dr. Pinkus on 17 April 1984; that he recommended tests that were performed on 24 April; and that plaintiff returned on 2 May at which time Dr. Pinkus told her that she had carpal tunnel syndrome and referred her to Dr. Milek, an orthopedic surgeon specializing in hand surgery. Doctor Pinkus, testifying by deposition said it was, "most unlikely" that there was any causal relationship between plaintiff's working condition and her carpal tunnel syndrome; and that among other causes recognized were pregnancy, rheumatoid arthritis, gout, multiple myeloma, steroids, idiopathy, etc.

Plaintiff went to Dr. Milek for the first time on 15 May 1984. Dr. Milek testified that plaintiff told him she had suffered pain and numbness in both hands for several years prior to that visit. Dr. Milek put her in little plaster splints and prescribed pyridoxine, another name for vitamin B–6. He saw her again on 19 June 1984. She was "a little better," and he continued her on the splints and B–6 and told her to come back in three months. Plaintiff returned on 18 September 1984, and complained that she was waking up two or three times at night with numbness and tingling of the digits, primarily on the right hand. She also reported that she was having trouble writing and driving. Doctor Milek recommended an operation on the right hand which was performed on 24 September 1984.

There is no indication in the testimony of plaintiff, Dr. Pinkus, or Dr. Milek, that any discussion took place between plaintiff and either doctor on the subject of whether plaintiff's carpal tunnel syndrome was work connected. Doctor Milek testified that he could not say that there was a causal connection between plaintiff's work activity and her carpal tunnel syndrome.

The trial court made no findings of fact and none were requested.

■ On the issue of notice, nothing that occurred prior to plaintiff's conversation with Mr. Scott in mid-May or June complied with the requirements of *Masters v. Industrial Garments*, 595 S.W.2d 811 (Tenn. 1980) and numerous other cases, that the employer have actual knowledge of the time, place, nature and cause of the injury.

■ The next consideration is whether plaintiff's conversation with Mr. Scott within thirty days of her discovery that she had carpal tunnel syndrome was sufficient to give employer timely notice. Doctor Pinkus told her on 2 May 1984 that she had carpal tunnel syndrome and Dr. Milek confirmed that diagnosis on 15 May. If plaintiff saw Mr. Scott in mid-May the notice was timely, but if her visit was later than 1 June it was it was not timely. We find it inappropriate to resolve this issue on the basis of credibility between plaintiff and Mr. Scott. When an employee makes an

undisputed attempt to file a worker's compensation claim with a proper representative of the employer, it is incumbent upon the employer to make an appropriate record of the employee's claim, regardless of the employer's position with respect to its merits. We find that plaintiff's testimony that she went to see Mr. Scott in mid-May shifted the burden of proving a contrary date to the employer and Mr. Scott's testimony of an unspecified date in June fails to meet that burden.

■ However, plaintiff's medical proof fails to meet the requirements of *P & L Construction Co. v. Lankford,* 559 S.W.2d 793 (Tenn.1978); *Lynch v. LaRue,* 198 Tenn. 101, 278 S.W.2d 85 (Tenn.1955), and numerous other cases. In addition to the failure of the medical proof, it is clear that plaintiff had carpal tunnel syndrome for at least two years prior to being promoted to the position of utility sewer; and that after leaving defendant's employment on 13 April 1984 other activities resulted in pain and discomfort that terminated in surgery over five months later. Thus regardless of how the trial judge might have resolved this issue we would be required to hold, as a matter of law, that there is no material evidence to support a finding that there was a causal connection between plaintiff's employment by defendant and her physical problems.

The result reached by the trial judge is affirmed for the reasons stated herein. Costs are adjudged against plaintiff.

BROCK, C.J., HARBISON and DROWOTA, JJ., and GREER, Special Justice, concur.