**Peggy Sue SINGLETON,
Plaintiff–Appellee,**

v.

**PROCON PRODUCTS,
Defendant–Appellant.**

Supreme Court of Tennessee,
at Nashville.

April 23, 1990.

Nancy K. Corley, Nashville, for defendant-appellant.

Mark W. Goad, Smyrna, for plaintiff-appellee.

OPINION

FONES, Justice.

This is a workers' compensation appeal in which the employer challenges the trial court's findings that the employee sustained an injury arising out of and in the course of employment and that she sustained a ten percent permanent partial disability. The employer argues that the evidence indicates that the injury sustained was caused by an accident unrelated to employment. Also, the employer urges this Court to find that the medical testimony was insufficient to support a finding of a permanent injury. We affirm the finding of a work-related injury, but reverse the finding of a permanent injury.

Mrs. Peggy Sue Singleton has worked for Procon Products (hereinafter "Procon") since March of 1981. On 13 February 1986, she slipped and fell on Procon's icy parking lot. This injury to her back arose out of and in the course of her employment. Singleton was taken to the hospital that day, and she spent the next two weeks there. Her husband testified at trial that he observed changes in her walk after this injury. Also, Singleton had difficulty riding in automobiles for long distances and moving furniture. She incurred many medical expenses due to this injury. Singleton returned to work eight weeks after the fall and performed "light" work.

On 20 July 1986, Singleton slipped and fell at a grocery store. This injury forced Singleton to miss work until 11 August 1986. When asked about this injury's effect on her overall physical movement, Singleton's husband testified that he observed no difference in her movement before and after this second fall.

At trial, the only medical evidence consisted of Dr. Lawrence P. Laughlin's deposition. Dr. Laughlin, an orthopedic surgeon, first examined Singleton on 22 October 1987. He stated, "She came in com-

plaining of back pain, reporting that she fell about two years ago [the deposition was taken on 3 May 1988], on the ice, injuring her back." On direct examination, Dr. Laughlin testified, "Movement in the back was, perhaps 90 percent of normal, with some tenderness over the lumbosacral junction and buttocks on the left."

Dr. Laughlin further testified, "It is my opinion she will retain a permanent physical impairment of zero to five percent." On cross examination, Dr. Laughlin was asked to explain his impairment rating; the transcript reads as follows:

Q. Doctor, you gave her an impairment rating of zero to five percent. Now, the zero percent would be that she would have no permanent impairment; is that correct?

A. Yes, ma'am, that's correct.

Q. So you don't really know whether or not she is going to have any permanent impairment.

A. No ma'am, I do not.

Q. All right. Do you anticipate that she will have continued problems with her back?

A. I don't really know the answer to that question. I do know that over the period of eight months, I saw her on several occasions, really as a result of really what you and I would call trivial injuries, with the problem with her back. So it's possible that she could have back problems.

Dr. Laughlin stated that the only objective symptom that Singleton possessed was a muscle spasm. Also, the doctor did not place any work restrictions on Singleton.

In its order of judgment, the trial court found that the accident and injuries complained of by Singleton arose out of and in the course of employment. As a result, the judge awarded temporary total disability benefits and reimbursement for medical expenses. The judge also held that Singleton sustained a permanent partial disability of ten percent to the body as a whole.

In its appeal, Procon challenges the lower court's finding that Singleton's disability arose out of and in the course of employ-

ment. Specifically, Procon argues that the evidence is insufficient to prove that the work-related accident caused the disability. The two accidents involved are similar in several respects; both occurred in 1986 and both were apparently the result of slipping on ice. There is little evidence in the record concerning the second fall. On cross examination, Singleton testified:

Q. You had a subsequent fall after you fell in the parking lot at Procon, didn't you?

A. Yes.

Q. You fell at Kroger's?

A. Yes, ma'am.

Q. In some ice, in July of 1986; is that correct?

A. Yes, ma'am.

Q. I think the ice machine had leaked and you fell; is that right?

A. Yes, ma'am.

Singleton's husband testified:

Q. Are you aware of a fall that she had in July of '86 at Kroger's?

A. Yes, I believe it involved a pool of water or something there at the store. I wasn't on the scene when she fell, but I was told about it.

Singleton's causation argument is based upon Dr. Laughlin's testimony. In response to a question about Singleton's history, Dr. Laughlin stated that she fell "on the ice injuring her back." He also testified that her complaints and symptoms were consistent with her report that "she had fallen on the ice." Neither party asked the doctor about which fall on the ice he was speaking; in fact, it is not shown that the doctor even knew that there were two falls. Thus, the doctor's testimony is not explicitly clear about which fall he testified was the cause of the disability. The trial court must have concluded that the doctor's testimony was based upon the fall at Procon.

There was lay testimony supporting this interpretation of the doctor's deposition. In *P & L Construction Co., Inc. v. Lankford*, 559 S.W.2d 793, 794 (Tenn.1978), this Court held:

In a workmen's compensation case, a trial judge may properly predicate an award on medical testimony to the effect that a given incident "could be" the cause of the plaintiff's injury, when he also has before him lay testimony from which it may reasonably be inferred that the incident was in fact the cause of the injury.

Plaintiff's husband testified that he saw a physical difference in Plaintiff's movements after the first fall, but not after the second fall. His testimony was as follows:

Q. Subsequent to February 13, 1986, can you tell us whether you saw her walk like that after the emergency room and if you did how often would you see her walk in a bent over manner?

A. There was [sic] periodic times where I would have to help her out of bed.... I mean, you know, she would walk as if she was in pain in her back, stooped you know.

. . . . .

Q. Based upon your observations of her, could you tell any difference between the way she would walk, the way she would physically move and act before the fall at Kroger and after the fall at Kroger?

A. No, sir.

After hearing the testimony, the trial judge found that the work-related fall at Procon caused the disability. We hold that a preponderance of the evidence does not show otherwise, and thus we affirm the court's finding. *See* Tenn.Code Ann. § 50–6–225(e).

■ Procon also challenges the trial court's finding of a permanent injury. This Court has held that "except in the case of injuries resulting in a permanent disability that is obvious to a layman, a finding of permanent disability in workers' compensation cases must be based upon the testimony of competent medical authorities." *Freemon v. VF Corp., Kay Windsor Div.,* 675 S.W.2d 710, 711 (Tenn.1984). *See also Anthony v. Kelly Foods, Inc.,* 704 S.W.2d 305, 308 (Tenn.1986). Since this injury is one which is not obvious to a layman, expert medical testimony is necessary to prove that the injury is permanent.

In *Owens Illinois, Inc. v. Lane,* 576 S.W.2d 348 (Tenn.1978), this Court examined the role of medical witnesses in determining the permanency of a disability. We held:

[A]ny expert medical witness presented must give testimony that preponderates in favor of permanency to qualify as having probative value on that issue. In short, the medical witness, in expressing his opinion, must use language that means that the medical factors that indicate permanency of disability outweigh those to the contrary.

*Id.* at 350. In *Owens,* the only medical proof was the deposition of an orthopedic surgeon. When asked whether the disability was permanent, the doctor responded, "Well, it's just a possibility." Also, the doctor stated that there was a forty percent chance that the employee would have a permanent disability and a sixty percent chance that he would not. We held that the above testimony "clearly fails to preponderate in favor of permanency." *Id.*

In *Maryland Casualty Co. v. Young,* 211 Tenn. 1, 5, 362 S.W.2d 241, 243 (1962), the medical expert testified that the disability was "very possibly" permanent. Also concerning permanency, the doctor testified, "I can't say whether it will or won't, it would be more subject to it, there is more of a possibility to it." *Id.* The Court held that this evidence did not support a finding of permanency; "[t]his evidence amounts to saying it might or it might not. Such is conjecture and at best would support only a likelihood or possibility of these things ever happening." *Id.* at 6, 362 S.W.2d at 243. *See also Harris v. Kroger Co.,* 567 S.W.2d 161, 163 (Tenn.1978) (trial court's refusal to award permanent disability benefits due to doctor's testimony that he was unable to state that the disability was permanent was affirmed).

In this case, Dr. Laughlin answered several questions indicating that he could not tell whether Singleton's disability would continue or not. He stated that it was

"possible" that the disability was permanent, and this kind of testimony only shows the "likelihood or possibility" of permanency, while medical proof must preponderate in favor of permanency to support a finding thereof.

The trial court's finding of an injury arising out of and in the course of employment is affirmed, but the finding of a permanent partial disability is reversed. This case is remanded to the trial court for the entry and enforcement of a decree in accord with this opinion. Costs are taxed one-half to Plaintiff and one-half to Defendant.

DROWOTA, C.J., and COOPER, HARBISON and O'BRIEN, JJ., concur.