IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 9, 2005 Session

## WANDA BARRON v. STATE OF TENNESSEE DEPARTMENT OF HUMAN SERVICES

**Direct Appeal from the Tennessee Claims Commission**
**No. 20200425     Nancy C. Miller Herron, Commissioner**

---

**No. W2004-01667-SC-R3-CV - Filed February 14, 2006**

---

The plaintiff sought workers' compensation benefits for pain in her lower back and hip resulting from a work-related accident. We conclude that the Commissioner erred in finding the evidence insufficient to establish that the plaintiff's injury was permanent and in dismissing the plaintiff's claim. Accordingly, we reverse the judgment of the Claims Commission and remand the case to determine the extent of vocational impairment and the reasonableness and necessity of medical expenses paid by the plaintiff.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Reversed; Remanded**

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and CORNELIA A. CLARK, JJ., joined.

Erich M. Shultz, Memphis, Tennessee, for appellant-plaintiff, Wanda Barron.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Sarah H. Cope, Assistant Attorney General, for the appellee-defendant, State of Tennessee.

### OPINION

In January 2002, the plaintiff, Wanda Barron, was employed in the child care licensing division of the Department of Human Services ("DHS") as an inspector of daycare centers. On January 24, 2002, Mrs. Barron fell and landed on her buttocks while walking down a ramp at a daycare center.

Mrs. Barron filed a complaint in the Tennessee Claims Commission seeking workers' compensation benefits for permanent total disability and for medical expenses incurred as a result of her injury. Following trial, the Commissioner found the evidence insufficient to establish that

Mrs. Barron suffered a permanent injury as a result of the accident. The Commissioner concluded that the remaining issue of medical expenses was moot and dismissed Mrs. Barron's claim.

Mrs. Barron appealed, and the appeal was referred to the Special Workers' Compensation Appeals Panel pursuant to Tennessee Code Annotated section 50-6-225(e)(3). Following oral argument before the Panel, this case was transferred to this Court for review.

## ANALYSIS

### A. Permanent and Total Disability

Mrs. Barron contends that the trial court erred in failing to find that she sustained a permanent total disability as a result of pain in her lower back and hip. A finding of permanent disability in a workers' compensation case must be based upon expert medical testimony unless the injury resulting in permanent disability is obvious to a lay person. Singleton v. Procon Prods., 788 S.W.2d 809, 811 (Tenn. 1990); Freemon v. VF Corp., Kay Windsor Div., 675 S.W.2d 710, 711 (Tenn. 1984).

Dorothy Jones, Mrs. Barron's supervisor, testified regarding her observations of Mrs. Barron when she returned to work following the accident. Ms. Jones stated that Mrs. Barron was unable to sit for long periods of time or to walk long distances. Ms. Jones further observed Mrs. Barron's condition worsen over time. This proof indicates that Mrs. Barron's pain was obvious to a layman but fails to establish that the *permanency* of Mrs. Barron's pain was obvious to a layman. The permanency of Mrs. Barron's injury, therefore, must be established by medical expert testimony.

In determining the standard of medical proof required to establish permanent disability, this Court has held:

> Any expert medical witness presented must give testimony that preponderates in favor of permanency to qualify as having probative value on that issue. In short, the medical witness, in expressing his opinion, must use language that means that the medical factors that indicate permanency of disability outweigh those to the contrary.

Johnson v. Midwesco, Inc., 801 S.W.2d 804, 806 (Tenn. 1990) (quoting Owens Illinois, Inc. v. Lane, 576 S.W.2d 348, 350 (Tenn. 1978)). Evidence indicating only the possibility of permanency is insufficient to support a finding of permanency. Singleton, 788 S.W.2d at 811-12.

The medical proof presented at trial included the deposition testimony of Dr. Stephen Waggoner, an orthopedic surgeon specializing in spinal disorders, and of Dr. Sheila Thomas, a physician certified in family medicine. In its findings, the trial court did not appear to accredit one physician's testimony over that of the other but considered the medical testimony as a whole in concluding that the evidence failed to establish permanency.

Because this medical expert testimony was presented by deposition, we extend no deference to the trial court's findings regarding this testimony. Cleek v. Wal-Mart Stores, Inc., 19 S.W.3d 770, 774 (Tenn. 2000). Ultimately, we must conduct an independent review of the evidence to determine where the preponderance of the evidence lies. See Tenn. Code Ann. § 50-6-225(e)(2) (2005); Cleek, 19 S.W.3d at 773-74.

Dr. Waggoner treated Mrs. Barron from March 2002 until June 2002. Dr. Waggoner testified that Mrs. Barron complained of severe pain in the lower lumbar spine and weakness in her leg when he first began treating her. Mrs. Barron had mild tenderness over her sacrum and coccyx region, but Dr. Waggoner did not observe swelling or spasms in her spine. During subsequent examinations, Mrs. Barron complained of increasing lower back pain and pain in her left hip.

X-rays of Mrs. Barron's spine and coccyx did not reveal any evidence of a fracture. An MRI indicated a possible contusion over the coccyx but did not reveal any evidence of a fracture, disk herniation, or spinal stenosis. Dr. Waggoner testified that following his March 13, 2002 examination of Mrs. Barron, he felt that Mrs. Barron "had some signs of symptom magnification on her exam because of the severe pain she was having with the light touch. This was basically a nonphysiologic type of finding. I am not sure why she was complaining of such severe pain from what I could find on the exam."

Dr. Waggoner recommended an aggressive physical therapy program for lumbar strengthening. The physical therapy, however, did not improve Mrs. Barron's condition. Dr. Waggoner stated he did not believe that further physical therapy would be beneficial. Rather, he instructed Mrs. Barron to continue with an exercise program on her own and to take Tylenol for the pain.

During subsequent examinations, Mrs. Barron complained of pain with light touch, pelvic rotation, and axial compression, all of which, according to Dr. Waggoner, typically should not cause pain. Dr. Waggoner stated that he also observed minimal swelling and tenderness in the lumbar region. He testified that his impression in June 2002 was that Mrs. Barron had reached maximum medical improvement. He released her from his care to return to her primary care physician. Although Dr. Waggoner did not assign Mrs. Barron an anatomical impairment rating, he did not equate his failure to do so with the absence of a disability. He acknowledged that he did not utilize the chapter of the American Medical Association Guidelines for Permanent Impairment ("AMA Guides") to evaluate any impairment due to pain.

After Dr. Waggoner released Mrs. Barron, she sought treatment from Dr. Thomas. Dr. Thomas testified that she did not conduct a physical examination of Mrs. Barron's back or hip but reviewed tests conducted by other doctors. Dr. Thomas opined that Mrs. Barron's hip pain, which first arose months following the accident, was the result of inflammation from the initial injury. Dr. Thomas observed Mrs. Barron walking with a limp and experiencing difficulties sitting in a chair. Dr. Thomas stated that when Mrs. Barron sat in a chair she would position her hands in such a way as to prevent her buttocks from touching the chair.

During the course of treating Mrs. Barron, Dr. Thomas gave her intramuscular injections, pain medication, and muscle relaxers. Dr. Thomas testified that despite these courses of treatment Mrs. Barron's pain never ceased. Furthermore, some of the medications caused Mrs. Barron to suffer from drowsiness and various gastrointestinal problems such as nausea and vomiting. Dr. Thomas explained that Mrs. Barron will continue to require treatment in an attempt to alleviate her pain.

When questioned regarding whether Mrs. Barron sustained a permanent impairment due to pain under the AMA Guides, Dr. Thomas stated that she was not familiar with the applicable percentages because the nature of her practice does not require her to assign anatomical impairment ratings on a regular basis. Dr. Thomas, however, testified that Mrs. Barron was unable to conduct the activities of daily living, which Dr. Thomas acknowledged are functions measured in the AMA Guides in determining an impairment rating. Dr. Thomas further testified,

> I know all of the treatments that I have done with her have not worked. She's continued to have the pain and has actually not expressed that there has been any relief in the pain or really any improvement in the pain, maybe a slight amount, but . . . she had the side effects associated with those medications. So I really haven't seen any change in her since the first day I saw her last year.

Both Dr. Waggoner and Dr. Thomas testified regarding the various treatments provided to Mrs. Barron and her continued pain despite the treatments. Both physicians also made objective findings regarding Mrs. Barron's pain. Dr. Waggoner observed some swelling and tenderness in the lumbar region while Dr. Thomas noted inflammation. Dr. Waggoner characterized Mrs. Barron's condition as "chronic back pain with left hip pain." Dr. Thomas testified that she had not observed any improvement in Mrs. Barron's condition since she began treating her. Neither physician assigned an anatomical impairment rating or permanent restrictions due to Mrs. Barron's injury. Both physicians acknowledged, however, that they did not consider the AMA Guides' chapter on impairment due to pain. Furthermore, we do not believe that the absence of permanent restrictions alone precludes a finding of permanency. Considering the medical evidence in its entirety, we conclude that the testimony of Dr. Waggoner and Dr. Thomas is sufficient to establish that Mrs. Barron's condition is permanent. See Johnson, 801 S.W.2d at 806.

Because the trial court dismissed the claim after finding a lack of permanency, the Commissioner did not reach the issue of vocational impairment. We therefore remand the case for a determination of the extent of vocational impairment. We recognize that prior to trial, Mrs. Barron conceded that the evidence would not support a finding of permanent partial disability and sought benefits for permanent total disability only. A court, however, is not bound by a party's concession. See, e.g., State v. Gomez, 163 S.W.3d 632, 661-62 (Tenn. 2005) (refusing to accept the State's concession that the defendants' sentences were imposed in violation of the Sixth Amendment); State v. Mitchell, 137 S.W.3d 630, 639-40 (Tenn. Crim. App. 2003) (declining to accept the State's concession that the evidence supported the trial court's application of one of the elements of the marital communications privilege). Before accepting Mrs. Barron's concession on remand, the

Commissioner should conduct an independent analysis of the evidence and the applicable law to determine whether the proof supports an award of either permanent partial disability or permanent total disability.

## B. Medical Expenses

Mrs. Barron seeks reimbursement for medical expenses that she paid since being released by Dr. Waggoner, as well as future medical expenses. The Commissioner concluded that the issue was moot due to her finding that Mrs. Barron was not permanently disabled.[1]

An employer is responsible for reasonable and necessary medical care resulting from an employee's work-related injury even if the injury does not result in permanent impairment. See Tenn. Code Ann. § 50-6-204(a)(1), (b)(1) (Supp. 2001); Stephens v. Henley's Supply & Indus., Inc., 2 S.W.3d 178, 179 (Tenn. 1999); Wilkes v. Res Auth. of Sumner County, 932 S.W.2d 458, 461 (Tenn. 1996). Accordingly, we remand this case to the Claims Commission for a determination of the reasonableness and necessity of the medical expenses paid by Mrs. Barron.

## CONCLUSION

We conclude that the evidence is sufficient to establish that Mrs. Barron's injuries were permanent. We further conclude that the Commissioner erred in declining to address Mrs. Barron's claims for medical expenses. Therefore, we reverse the judgment of the Claims Commission. We remand the case to the Claims Commission for determinations regarding the extent of vocational impairment and the reasonableness and necessity of medical expenses paid by Mrs. Barron.

Costs of appeal are taxed to the appellee, the State of Tennessee.

_____
JANICE M. HOLDER, JUSTICE

---

[1] To prevent additional proceedings and undue delay, a trial court should make appropriate findings of fact and alternative findings necessary for appellate review. See Cunningham v. Shelton Sec. Serv., Inc., 46 S.W.3d 131, 137-38 (Tenn. 2001).