FILED

March 11, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:45 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT JACKSON

| | |
|---|---|
| JERRY CHOATE,<br>　　　　Employee,<br><br>v.<br><br>REVEL LOGGING, LLC,<br>　　　　Employer,<br><br>And,<br><br>FORESTRY MUTUAL INS. CO.,<br>　　　　Insurance Carrier. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No.: 2015-07-0040<br><br>State File Number: 69620-2014<br><br>Judge Allen Phillips |

---

## COMPENSATION HEARING ORDER DENYING DISABILITY AND PAST MEDICAL BENEFITS AND GRANTING FUTURE MEDICAL BENEFITS

---

This matter came before the undersigned workers' compensation judge for a Compensation Hearing on February 9, 2016, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Choate requests permanent partial disability, additional temporary total disability (TTD), and mileage reimbursement. Revel contends he has failed to establish any entitlement to further disability benefits or mileage reimbursement. It requests reimbursement from Mr. Choate of a TTD overpayment. The central legal issues are: (1) whether Mr. Choate has established, by a preponderance of the evidence, any entitlement to further benefits; and, (2) whether he should be compelled to repay Revel for any TTD overpayment. For the reasons set forth below, the Court finds that Mr. Choate is not entitled to permanent partial disability, temporary total disability, or mileage reimbursement. However, he is entitled to future medical benefits. Additionally, Mr. Choate should not be compelled to repay any TTD.

### History of Claim

Mr. Choate is a forty-four-year-old resident of Gibson County, Tennessee, who worked for Revel as a truck driver. (T.R. 1.) On August 28, 2014, he was pulling a log

1

trailer in Lawrence County, Tennessee. Two tires on the trailer "blew out," causing the vehicle to turn over on its right side. Mr. Choate struck his neck, back, and head in the accident.

Revel accepted Mr. Choate's injury as compensable and provided a panel of physicians. Mr. Choate chose Dr. Kelly Pucek, an orthopedic surgeon, who he first saw on September 26, 2014. Dr. Pucek noted normal x-rays and CT scans of the neck and back. His examination revealed pain, spasm, and swelling of the neck and back muscles. Given the "mechanism of injury," Dr. Pucek recommended MRIs of both the cervical and lumbar spine. (Ex. 2 at 18.) The MRIs performed on October 6, 2014, were normal. (Ex. 2 at 19 and 20.)

While treating with Dr. Pucek, Mr. Choate complained of headaches. As a result, Revel provided a panel of neurologists from which Mr. Choate chose Dr. Bola Ademolekun. On November 18, 2014, Dr. Ademolekun recorded a history of the accident and noted the normal CT scans and MRIs. He noted Mr. Choate was undergoing physical therapy. After examination, Dr. Ademolekun diagnosed "post-traumatic headaches" and prescribed Topamax (topiramate), an anti-seizure drug, and diclofenac sodium, an anti-inflammatory drug. Mr. Choate was to return in three weeks. (Ex. 3 at 8.)

At a November 26, 2014 follow-up visit, Dr. Pucek noted both MRIs were normal. He also noted Mr. Choate had completed "his therapy." (Ex. 2 at 22.) After examination, Dr. Pucek opined there were no structural injuries to prevent Mr. Choate from working full duty. He released Mr. Choate to return to work. Dr. Pucek stated Mr. Choate might continue to follow with, "the neurologist [regarding] any restrictions." *Id.*

On December 9, 2014, Dr. Ademolekun noted Mr. Choate's headaches had decreased in frequency but that he had "excessive drowsiness following the morning dose of topiramate." (Ex. 3 at 9.) He changed Mr. Choate's prescription to a nighttime "extended release formulation" of the drug in an attempt to relieve his daytime drowsiness. Dr. Ademolekun maintained the diagnosis of post-traumatic headaches and advised Mr. Choate to return in two months. At that visit, Dr. Ademolekun released Mr. Choate to return to work without restrictions and placed him at maximum medical improvement (MMI). *Id.* at 10 and 12.

On January 5, 2015, Dr. Pucek saw Mr. Choate for a final visit and again stated there were no structural issues from an orthopedic standpoint. On February 8, 2015, he opined Mr. Choate was at MMI as of January 5, 2015, with no permanent impairment. (Ex. 2 at 29 and 30.)

On March 10, 2015, Mr. Choate returned to Dr. Ademolekun and reported having had "3 headaches that he describes as severe." (Ex. 3 at 13.) He was having "3-4 mild headaches per week." *Id.* Dr. Ademolekun maintained the diagnosis of post-traumatic

2

headaches and increased Mr. Choate's medications. This is the last record of Dr. Ademolekun in evidence.

The Court conducted an Initial Hearing on July 16, 2015, and entered an Initial Hearing Order wherein, among other deadlines, it set a Compensation Hearing for November 9, 2015. On July 24, 2015, Mr. Choate claimed to have suffered a "seizure" while standing in his driveway. Because Mr. Choate requested further medical evaluation, Revel moved to continue the November 9, 2015 hearing date. The Court reset the matter for February 9, 2016.

After Mr. Choate's request for further evaluation, Revel learned Dr. Ademolekun no longer accepted workers' compensation patients. It provided a new panel of physicians from which Mr. Choate chose Dr. John Brophy, a neurosurgeon. Revel deposed Dr. Brophy on February 1, 2016. Dr. Brophy testified Mr. Choate's diagnoses were subjective post-traumatic headaches, subjective neck and back pain, and a possible seizure versus a fainting event. (Ex. 5 at 17.) He testified there was no relationship between any seizure and the injury of August 28, 2014. However, Dr. Brophy testified Mr. Choate needed neurological evaluation of the seizure event. This evaluation also, "would be useful in addressing his ongoing headaches." *Id.* at 22-23. Dr. Brophy testified he informed Mr. Choate that a confirmed seizure diagnosis would prevent him from driving for six months. *Id.*

Dr. Brophy agreed with Drs. Pucek and Ademolekun that Mr. Choate had no permanent impairment from the accident on August 28, 2014, and agreed he may return to work at full duty. He further agreed with the MMI date of December 9, 2014. (Ex. 5 at 18-19.) Mr. Choate saw no other providers.

Revel terminated Mr. Choate following the accident. He claims to have received a letter from Revel terminating him as of September 9, 2014. Ms. Gabi Middleton, Revel's office administrator, testified Revel "suspended" Mr. Choate for three days because of the accident, which is standard operating procedure. Thereafter, Mr. Paul Doyle attempted to contact Mr. Choate to no avail. Revel terminated Mr. Choate for failing to report to work or call in, thus violating Revel's "three-day no-call, no-show policy." Mr. Choate contested these details to the extent that he claims he did contact Mr. Doyle, who advised there was no truck available for him to drive in September 2014. He also provided an off-work statement to Mr. Doyle.

On December 31, 2015, Revel served Mr. Choate with a set of Requests for Admissions. Mr. Choate did not reply. Revel moved to have the requests admitted, and the Court reserved the motion until the hearing. At the hearing, Mr. Choate agreed to the requested matters. Specifically, he agreed Revel paid him TTD from August 28, 2014, until February 13, 2015. Further, Revel requested he admit it had failed to pay TTD for only one period, that of September 1, 2014, through September 25, 2014. Because Mr.

3

Choate was paid TTD after the MMI date of December 9, 2014, Revel argued it was entitled to reimbursement of the TTD paid from December 9, 2014, to February 13, 2015. When offsetting the amount of the missed payments in September 2014, Revel argued Mr. Choate "owed" it a reimbursement. Revel offered no evidence regarding why it failed to pay TTD for the period in September 2014 or why it continued TTD payments after the assessment of MMI.

Mr. Choate contested the December 9, 2014 MMI date. He thought it should be sometime in January 2015. He argued that Dr. Ademolekun was increasing his headache medications in December 2014.

Mr. Choate claimed mileage reimbursement for several trips he made between Springville, Tennessee and Jackson, Tennessee. His providers were located in Jackson, and during the time Mr. Choate received medical care, he lived with his girlfriend in a recreational vehicle in Springville. The round-trip mileage between the locations, according to Mr. Choate, was approximately 120 miles. He claims to have advised Revel's case manager of the living arrangement and asked for local physicians. Revel countered that Mr. Choate's permanent address was in Humboldt, Tennessee, fewer than fifteen miles from the providers' offices in Jackson. Mr. Choate agreed with that assertion. Because Mr. Choate's permanent address did not change from Humboldt to Springville, Revel argued he was not entitled to mileage reimbursement.

Mr. Choate testified he has not worked since his termination from Revel. He has no income and relies upon his family for financial assistance. Mr. Choate claims an inability to work at any of his prior jobs because of headaches, described as migraines occurring twice every week. He specifically testified he is unable to drive a truck because he could not sit in a vehicle for "ten to twelve hours a day." Moreover, Mr. Choate lost his commercial driver's license when his personal physician would not clear him to drive because he took Topamax. He argued he was entitled to benefits for his inability to work, and Mr. Choate "believes" that inability is permanent.

### Findings of Fact and Conclusions of Law

In this case, the Court will not construe the Workers' Compensation Law remedially or liberally in favor of either party but shall construe it fairly, impartially and in accordance with basic principles of statutory construction favoring neither Mr. Choate nor Revel. At this compensation hearing, Mr. Choate has the burden of proving all essential elements of his claim for further disability and medical benefits by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

At the outset, for his injury to be compensable, Mr. Choate must show it arose

4

primarily out of and in the course and scope of employment and be identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(13)(A) (2015). The parties do not contest the occurrence of the incident. Thus, the issue is medical causation. Mr. Choate must show, to a reasonable degree of medical certainty, that the incident "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. Tenn. Code Ann. § 50-6-102(14)(D) (2015).

*Permanent Partial Disability Benefits*

This Court may award permanent disability benefits only upon expert medical testimony that Mr. Choate's injuries are permanent, unless his permanent disability is obvious to a layperson. *Singleton v. Procon Prods.*, 788 S.W.2d 809, 811 (Tenn. 1990); *Freemon v. VF Corp., Kay Windsor Div.*, 675 S.W.2d 710, 711 (Tenn. 1984). Mr. Choate's alleged permanent disability is not obvious; hence, he must present expert proof of permanent disability. Drs. Pucek, Ademolekun, and Brophy each assessed a zero percent permanent partial impairment to the body as a whole pursuant to the 6th Edition of the AMA Guidelines to the Evaluation of Permanent Impairment. (Ex. 2 at 29; Ex. 3 at 12; Ex. 5 at 18.) None of the physicians restricted his ability to work. Accordingly, Mr. Choate has failed to establish by a preponderance of the evidence that he sustained any permanent disability because of the August 28, 2014 injury.

*Temporary Disability Benefits*

TTD is payable to an employee who is totally disabled to work by an injury for the period that he is recovering as far as the nature of his injury permits. *Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 776 (Tenn. 2000). Under Tennessee law, to establish entitlement to temporary total benefits, Mr. Choate must show he "was (1) totally disabled to work by a compensable injury; (2) that there was a causal connection between the injury and his inability to work; and (3) the duration of that period of disability." *Id.* TTD benefits terminate when an employee demonstrates the ability to return to work or attains MMI. *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015).

In this case, the parties agree Mr. Choate sustained a compensable injury. Further, by stipulated answers to requests for admissions, the parties agree to the periods and amounts of TTD to which Mr. Choate is entitled. The disputed issue is whether Revel is entitled to reimbursement of a TTD overpayment. In resolving this issue, the Court first notes the relevant periods. Mr. Choate sustained an injury on August 28, 2014. Revel paid TTD from August 28, 2014, through February 13, 2015, with the exception of the period from September 1, 2014, through September 25, 2014. It agrees Mr. Choate is

entitled to TTD for the three week and four-day period of September 1, 2014, through September 25, 2014. However, since Dr. Ademolekun placed Mr. Choate at MMI on December 9, 2014, Revel contends it overpaid him nine weeks and four days of TTD for the period of December 9, 2014, through February 13, 2015. Even if it considers the missing payments in September 2014, Revel argues Mr. Choate must reimburse it an overpayment of $2,397.81.[1]

Given the previous finding regarding permanent disability, there is no award of permanent disability benefits entitling Revel to a credit for the TTD overpayment. Therefore, the Court turns to Tennessee authority on the issue of whether an employee might be compelled to repay a TTD overpayment in the absence of an award of permanent disability. In *Frazier v. AFG Indus.*, No. 03S01-9308-CV-00058, 1994 Tenn. LEXIS 396, at *6 (Tenn. Workers' Comp. Panel June 14, 1994), the court noted the issue was, at that time, "apparently [one] of first impression in Tennessee." *Id.* In looking to other jurisdictions, the court noted New Mexico had addressed the issue in at least two cases. The panel then "paraphrased" certain guidelines from those cases to follow in future Tennessee "cases of this nature." *Id.* at *8. Namely, when considering whether to order repayment of TTD, a court should consider 1) the culpability of the employee, if any, in accepting the TTD payments; 2) the negligence, if any, of the employer in making the overpayments; and 3) both the employee's ability to repay the TTD and the hardship upon him if ordered to do so. *Id.* The panel described these factors as, "the dimensions of what constitutes fundamental fairness." *Id.* at *8-9.

Importantly, in *Frazier*, "there was no evidence introduced in the trial court concerning the reasons for the overpayment, nor was there an examination of any of the circumstances surrounding the payment of the temporary total disability." *Id.* at *9. The panel noted that such examination, "should be done before ordering or denying repayment" of TTD. *Id.* Ultimately, the *Frazier* court denied the employer's request for reimbursement of TTD because of the, "lack of any evidence to show the retention of the [TTD] by the employee would be fundamentally unfair." *Id.* at 10. Moreover, the court found medical evidence that "justif[ied] the receipt" of TTD for the contested period.

In this case, Revel did not submit evidence why it continued TTD payments to Mr. Choate past December 9, 2014, the date of MMI. Likewise, there was no evidence to indicate why Revel did not pay Mr. Choate the TTD owed to him in September 2014. The Court finds no culpability on Mr. Choate's part in accepting TTD beyond MMI; instead, the Court concludes that Revel simply overpaid the TTD by oversight. The same may be said regarding the failure to pay the TTD benefits owed Mr. Choate for September 2014. The Court further finds ordering Mr. Choate to repay the overpayment of TTD would create an unreasonable hardship upon him. Because he has not worked

---

[1] The parties stipulated the amount of TTD owed for the period of September 1, 2014, until September 25, 2014, is $1,427.22. The overpayment of the nine weeks from December 9, 2014 through February 13, 2015, is equal to $3,825.03. The difference between the amount owed and the amount overpaid is $2,397.81 ($3,825.03-$1,427.22).

since the accident, the Court seriously questions his ability to repay the amount requested by Revel.

Additionally, similar to the facts of *Frazier*, Mr. Choate continued to complain of issues *after* the MMI date of December 9, 2014. At the December 9, 2014 visit, Dr. Ademolekun recorded Mr. Choate's complaints of daytime drowsiness and adjusted his medications accordingly. He directed Mr. Choate to return two months later. Later, the parties continued an expedited hearing by consent to allow Mr. Choate a return visit to a physician. Revel not only consented to a return visit, but it also provided an additional panel physician, Dr. Brophy, when Dr. Ademolekun became unavailable. Mr. Choate's testimony at the hearing was that the effects of his medications hampered his ability to drive a truck while on medications, and it is unusual that Dr. Ademolekun would return him to regular duty as a truck driver when he was attempting to adjust medications to prevent drowsiness.

Taking the evidence as a whole, the Court finds it inappropriate to order Mr. Choate to reimburse Revel for the TTD overpayment. In so doing, the Court notes the *Frazier* court cited the liberal presumption applicable to pre-July 1, 2014 cases when *reviewing the medical evidence* and not when looking solely to fundamental fairness. This Court must, and does, apply an impartial standard favoring neither party. This Court can apply the test of fundamental fairness espoused by *Frazier* under a fair and impartial analysis just as it was applied under a liberal presumption. Importantly, the fundamental fairness test of *Frazier* does not involve a question of statutory construction but rather an assessment of a given set of facts before the Court.

*Mileage Reimbursement*

Tennessee Code Annotated section 50-6-204(a)(6)(A) (2015) provides:

> When an injured worker is required by the worker's employer to travel to an authorized medical provider or facility located outside a radius of fifteen (15) miles from such insured worker's residence or workplace, then, upon request, such employee shall be reimbursed for reasonable travel expenses. The injured employee's travel reimbursement shall be calculated based on a per mile reimbursement rate . . . times the total round trip mileage as measured from the employee's residence or workplace to the location of the medical provider's facility. (Emphasis added.)

Mr. Choate argues he is entitled to mileage from Springville, Tennessee, some 120 miles round-trip from his medical providers in Jackson, Tennessee. The basis of his position is that he, at the time of his treatment, "lived" with his girlfriend in Springville.

By its plain reading, the statute allows mileage reimbursement when the employee

7

is compelled to travel from his *residence* to the medical provider's office. Revel argues Mr. Choate's residence was his home in Humboldt, Tennessee, a location fewer than fifteen miles from the medical providers in Jackson. The Court agrees. The evidence establishes Mr. Choate stayed in a recreational vehicle parked in Springville during the weekdays while he was seeking medical treatment. He returned to Humboldt on the weekends. Mr. Choate never legally changed his address or forwarded his mail.

Tennessee law holds that the term "legal residence is often implicit when residence is used as a qualification for a privilege, franchise, or in connection with domestic policy in general. *Asberry v. Garrett*, 1996 Tenn. App. LEXIS 372, at *8 (Tenn. Ct. App. June 19, 1996). To change a legal residence, a person must: (1) actually change his or her address to a new place; (2) intend to abandon his or her old domicile; and, (3) intend to establish a new domicile at the new residence. *Id.* Considering these general principles, the Court concludes Mr. Choate's legal residence is in Humboldt, Tennessee, fewer than fifteen miles from his medical providers. Accordingly, Mr. Choate is not entitled to mileage reimbursement.

*Future Medical Benefits*

Despite his failure to show entitlement to any permanent disability benefits, Mr. Choate nevertheless is entitled to future medical benefits. An employer is responsible for reasonable and necessary medical care resulting from an employee's work-related injury even if the injury does not result in permanent impairment. Tenn. Code Ann. § 50-6-204(b)(1) (2015); *Barron v. State Dep't of Human Servs.*, 184 S.W.3d 219, 223 (Tenn. 2006); *Stephens v. Henley's Supply & Indus., Inc.*, 2 S.W.3d 178, 179-180 (Tenn. 1999).

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Choate's claims for permanent partial disability benefits, additional temporary total disability benefits, and mileage reimbursement are denied.

2. Mr. Choate shall receive lifetime future medical benefits pursuant to Tennessee Code Annotated section 50-6-204(b)(1) (2015).

3. Revel's request for reimbursement of a temporary total overpayment is denied.

4. The Court taxes the costs of this cause, in the amount of $150.00, against Revel pursuant to Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2015), to be paid within five days of this order becoming final.

**ENTERED this the 11th day of March, 2016.**

8

_____
**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Compensation Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2.  File the completed form with the Court Clerk *within thirty days* of the date the Workers' Compensation Judge entered the Compensation Hearing Order.

3.  Serve a copy of the Compensation Hearing Notice of Appeal upon the opposing party.

4.  The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5.  The party filing the notice of appeal, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. Alternatively, the party filing the appeal may file a joint statement of the evidence within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03 (2015).

6. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be docketed and assigned to an Appeals Board Judge for review. At that time, a docketing notice shall be sent to the parties. Thereafter, the parties have fifteen calendar days to submit briefs to the Appeals Board for consideration. *See* Tenn. Comp. R. & Regs. 0800-02-22-.02(3) (2015).

## APPENDIX

Exhibits:
1. Requests for Admissions served on Mr. Choate by Revel;
2. Medical Records of Dr. Kelly Pucek;
3. Medical Records of Dr. Bola Ademolekun;
4. Medical Records of Dr. John Brophy;
5. Deposition of Dr. John Brophy; and,
6. Itemization of requested mileage.

Technical record:[2]
1. Petition for Benefit Determination (April 21, 2015);
2. Dispute Certification Notice (May 29, 2015);
3. Request For Initial Hearing (June 18, 2015); and,
4. Affidavit of Jerry Choate (July 8, 2015).

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence. The Court noted additional issues in the DCN, but neither party introduced evidence regarding those issues.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 11th day of March, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Mr. Jerry Choate, Self-represented | | | X | Stevechoate69@yahoo.com |
| Jeffery G. Foster, Employer's Counsel | | | X | jfoster@morganakins.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov