FILED

April 5, 2018

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 7:15 AM



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**IN THE COURT OF WORKERS' COMPENSATION CLAIMS**
**AT NASHVILLE**

| | | |
|---|---|---|
| MICHAEL LEPÉS, | ) | |
| Employee, | ) | Docket No. 2017-06-0384 |
| | ) | |
| v. | ) | |
| | ) | State File No. 62012-2016 |
| | ) | |
| TA OPERATING, LLC D/B/A | ) | |
| TRAVEL CENTERS OF AMERICA, | ) | Judge Joshua D. Baker |
| Employer. | ) | |

---

### COMPENSATION HEARING ORDER DENYING BENEFITS

---

At a Compensation Hearing on March 13, 2018, Mr. LePés requested medical, temporary disability, and permanent disability benefits for an injury from an exploding tire. TA Operating denied his claim because he did not use required safety devices. The Court holds that willful misconduct precludes his recovery and his claim for benefits. Alternatively, the Court holds that if Mr. LePés' willful misconduct did not bar his recovery, he cannot recover permanent partial disability benefits because he failed to prove his degree of permanent impairment.

### History of Claim

On the day of his accident, Mr. LePés had worked for TA Operating for ten years. He performed semi-truck maintenance and tire repair as a "Tech-6" when TA Operating's highest technician position is a Tech-7.

On August 11, 2016, a semi-truck tire exploded when Mr. LePés attempted to inflate it. The explosion hurled Mr. LePés upward, knocking him unconscious, shattering his right wrist, and fracturing his left jaw in three places. TA Operating provided medical care, including emergency surgery, and temporary disability benefits. It terminated benefits upon determining that Mr. LePés' injury stemmed from his violation of a safety

1

policy that required technicians to use a tire cage and automatic tire-inflator.

As Mr. LePés explained in his testimony, a tire cage contains the tire if the tire explodes during inflation. Along with an automatic tire-inflator that allows a technician to stand a safe distance from the tire cage while inflating the tire, the cage provides a measure of safety to technicians.

Mr. LePés admitted that TA Operating's policy requires technicians to use both safety devices when inflating tires. He acknowledged signing training certificates in 2014 and 2015 that read, "I promise to NEVER . . . inflate tires outside of a cage" (emphasis in original). He also signed a "Pre-shift meeting" memo in May 2016 that read:

> As we all know, aluminum wheels are subject to warping and wear which may result in the wheel lacking the proper dimension and contour to retain the tire bead during inflation . . . [This] can lead to explosive separation of the tire and rim and can cause SERIOUS PERSONAL INJURY or DEATH

(Emphasis in original). The memo further explained how to use a "carpenter's square" to identify warped or damaged wheels. If defective, it advised employees to "contact [a] manager and/or TSA to let the customer know that it will need to be replaced" due to the risk of explosion.

Concerning the events surrounding the accident, Mr. LePés testified that Heather Lamb, General Manager, wished him "good luck" when she gave him a damaged tire to replace. Ms. Lamb said she warned Mr. LePés to carefully inspect the tire before inflating it because the tire was exposed to fire. Ms. Lamb said the garage had a carpenter square for inspecting the tire. She also said Mr. LePés could have refused to work on the tire if it appeared warped or damaged.

Mr. LePés claimed the automatic tire-inflator was broken on the date of the accident and had been broken for roughly four weeks. Without the automatic tire-inflator, he complained, "The whole cage could have jumped up and smashed me in the face." Despite this concern, he testified he used the tire cage without the automatic tire-inflator in the weeks prior to his injury. On this day, however, he claimed sheet metal pieces, a tool box, and other trucks parked in the service area impeded his access to the tire cage. He said he did not feel comfortable moving someone else's "personal property" to access the cage.

Ms. Lamb disagreed with Mr. LePés concerning the tire inflator. She said the automatic tire-inflator worked on the day of the accident. Ms. Lamb also testified that the inflator sometimes required unplugging and resetting but was never out of service. She also recalled that the cage was accessible when Mr. LePés' accident occurred.

Zebbie Long, another technician, worked the shift before Mr. LePés on the day of the accident. He testified the automatic tire-inflator worked that day and had never been inoperable for any extended period of time since its installation. He admitted the second auto inflator and the one in use before it presented some operational problems but denied that either machine ever completely failed to work.

As for the tire cage, Mr. Long said he would use it without the automatic tire-inflator if necessary. He agreed clutter sometimes collected around the cage, but he just moved the clutter and continued to use the cage.

On the issue of its safety policies, TA Operating presented testimony indicating it enforced known violations and disciplined or counseled employees for failing to abide by them. To show its level of enforcement, Ms. Lamb stated that she completed an "Employee Counseling and/or Separation Report" after seeing video footage of the accident and warned Mr. LePés he would be terminated if he failed to follow safety procedures again. Ms. Lamb also cautioned Mr. LePés on previous occasions about several safety issues, including his failure to use wheel chocks, safety glasses and a bump cap, and for performing a faulty wheel service. Finally, she testified that she cautioned another employee in writing for "peeling" a tire.

Shawn Truman, a former Assistant General Manager, testified he made technicians stop and use a tire cage when he saw a violation. David Green, District Manager, testified he terminated several management staff at one location, including Mr. Truman, for not enforcing safety procedures to the company's standards.

On the issue of Mr. LePés' ability to return to work, Mr. Green stated he accommodated Mr. LePés' non-work-related condition before his accident and offered him a technician job at the Antioch location after he reached maximum medical improvement (MMI). Mr. LePés said he doubted he could still perform the job but never attempted it. Instead, he sold his house in Tennessee to avoid foreclosure and moved in with family in Colorado.

## Legal Principles and Analysis

At a compensation hearing, Mr. LePés must establish by a preponderance of the evidence that he is entitled to benefits. *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2017). The employee in a workers' compensation claim has the burden of proof on all essential elements of the claim. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, the employer has the burden of proving affirmative defenses, such as an employee's willful misconduct. *See* Tenn. Code Ann. § 50-6-110(b) (2017).

Here, the proof shows Mr. LePés suffered an injury that arose primarily out of and in the course and scope his employment when a tire he attempted to inflate exploded. *See* Tenn. Code Ann. § 50-6-102(14). His actions constituted duties he normally performed for TA Operating, and the incident occurred on TA Operating's property while Mr. LePés was on the clock. The employer, however, asserted the defense that Mr. LePés' alleged failure to use a safety device—a tire cage—barred him from recovery. *See* Tenn. Code Ann. §50-6-110(a)(4) (An employee is not entitled to recover benefits if his injury was due to his willful failure or refusal to use a safety device.); *see also Gonzales v. ABC Prof'l Tree Servs.*, 2014 TN Wrk. Comp. App. Bd. LEXIS 2, at *18 (Nov. 10, 2014).

To prevail on its defense, TA Operating must prove that (1) Mr. LePés had actual, as opposed to constructive, notice of the policy requiring use of the safety device; (2) he understood the danger in violating the policy; (3) TA Operating strictly enforced the policy; and (4) Mr. LePés did not have a valid excuse for violating the policy. *Gonzales*, at *21; *see also Mitchell v. Fayetteville Pub. Utils.*, 368 S.W.3d 442, 453 (Tenn. 2012). The Court finds that TA Operating proved its affirmative defense and holds that Mr. LePés' actions bar his recovery of workers' compensation benefits.

The Court finds Mr. LePés knew of the policy requiring him to use available safety devices and the danger to personal safety he faced in not abiding by the policy. Mr. LePés admitted knowing TA Operating's policy required him to use the tire cage to inflate tires and signed paperwork acknowledging the policy. He also admitted knowing that not using the tire cage could result in serious injury or death. He also signed a memo that explained the danger posed by warped or damaged rims. His supervisor also relayed the customer's warning concerning the tire's exposure to fire. Thus, the Court finds that Mr. LePés knew of the danger associated with inflating a tire without a tire cage and of the danger posed by this particular tire.

The Court also finds that TA Operating enforced its policy. Ms. Lamb testified that she disciplined Mr. LePés only two days after reviewing video footage of the accident. Further, she cautioned him and others in writing about similar safety issues before the accident. Mr. Truman testified he never let employees inflate tires outside of the tire cage. His testimony also indicated that TA Operating's management did not encourage speed over safety.

The Court next finds that Mr. LePés had no valid excuse for failing to use the tire cage. Ms. Lamb and Mr. Long both testified the automatic tire-inflator worked on the day of the accident, and the Court credits their testimony. However, even if the inflator did not work, this doesn't excuse Mr. LePés' failure to use the tire cage. While the two devices are usually used in conjunction, Mr. Long testified he would use the tire cage even without the automatic tire inflator. Mr. Lepés testified he used the cage without the automatic tire inflator in the weeks before the accident. Ms. Lamb testified technicians should use the tire cage "regardless" of whether the automatic tire-inflator is operable.

4

Similarly, the safety training certificate Mr. LePés signed simply asked that he never inflate a tire while it was outside a cage. Further, Mr. LePés' explanation that clutter surrounded the tire cage does not excuse his actions. As Mr. Long suggested, any clutter around the cage could be moved, or the cage could have been moved to a safe area. Finally, Ms. Lamb testified that it would have been acceptable for Mr. LePés to refuse to inflate the tire if inspection revealed the rim was warped or damaged. For these reasons, the Court holds TA Operating proved its willful misconduct defense and denies Mr. LePés' claim.

*Alternative Finding*

The Court alternatively holds that, even had Mr. LePés' actions not barred his claim he could not recover permanent partial disability benefits because he failed to establish the extent of impairment from his injury. Workers' Compensation Law directs that "[e]xcept where permanent disability is obvious to a layman, a finding of permanency must be based on competent medical evidence that there is a medical probability of permanency or that permanency is reasonably certain to be permanent." *Kellerman v. Food Lion, Inc.*, 929 S.W.2d 333, 335-336 (Tenn. 1996) (citing *Singleton v. Procon Prods.*, 788 S.W.2d 809 (Tenn. 1990)).

Mr. LePés filed a pre-hearing statement on February 27, 2017, which noted his intent to use Dr. Stephen Neely's written medical report to prove permanent impairment. He attached a copy of the report and addendum to his filing, but did not file a Standard Medical Report, Form C-32 or a transcript of Dr. Neely's deposition.

In a pre-hearing motion, TA Operating objected to the admissibility of Dr. Neely's written report under Rule 802 of the Tennessee Rules of Evidence. It also relied on Tenn. Comp. Rule & Reg. 0800-02-21-.14(2), which directs that letters or affidavits, even in affidavit form, may be excluded through a valid objection at a compensation hearing. It also pointed to Tenn. Code Ann. section 50-6-235(c)(2), which allows for a written medical report of an examining physician in lieu of a deposition if submitted on an appropriate form with sufficient notice of its intended use. In response, Mr. LePés argued the written report was admissible as a medical record under Tenn. Comp. Rule & Reg. 0800-02-.16(6)(b).

The Court sustained TA Operating's objection, finding that the report constituted a medical report rather than a medical record, and excluded the report as hearsay. Mr. LePés did not submit the form in an acceptable format or provide timely notice, and the report lacked sufficient reliability to constitute admissible testimony at a compensation hearing. In support of this decision, the Court notes that Tenn. Code Ann. section 50-6-235(c)(2) provides instruction for using a written medical report in lieu of a deposition, and that process provides opportunity for the opposing party to cross-examine the physician. Here, notice was not given on the appropriate form twenty days in advance of

its intended use. Instead, notice was provided in a filing on February 27, after the deadline the Court established in its Scheduling Order for the parties to take expert witness' depositions. This deprived TA Operating of the opportunity to take Dr. Neely's deposition and cross-examine him about opinions provided in his written report.

Consequently, even if Mr. LePés' willful misconduct had not barred his claim, his failure to present expert medical testimony concerning his degree of permanent impairment precludes him from recovering permanent partial disability benefits. However, the Court holds that he would be entitled to future medical treatment.

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court denies Mr. LePés' claim and dismisses it with prejudice to its refiling.

2. The Court assess the $150.00 filing fee against TA Operating under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2017), for which execution may issue as necessary.

3. TA Operating shall file a completed SD-1 form within ten days from the date of the issuance of this order.

4. Absent an appeal to the Appeals Board, the order shall become final thirty days after issuance.

**ENTERED ON APRIL 5, 2018.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:

1. Photograph of Tire Cage
2. Employee Counseling Separation Report for Michael LePés dated August 9, 2011
3. Employee Counseling Separation Report for Michael LePés dated October 18, 2011
4. Safety Training Certificate of Completion dated April 29, 2015
5. First Report of Injury
6. Wage Statement
7. Notice of Controversy
8. Safety Training Certificate of Completion dated February 22, 2014
9. Service Truck Employee Acknowledgment of Training dated October 11, 2007.
10. Video of accident
11. TA Truck Service Pre-shift Meeting Memo
12. Photograph of Automatic Tire Inflator
13. Employee Counseling Separation Report for Mark Floyd Carter dated February 1, 2014.
14. Employee Counseling Separation Report for Michael LePés dated August 13, 2016.
15. Employer's Responses to Employee's First Set of Interrogatories and Requests for Production
16. Employer's Responses to Employee's Second Set of Interrogatories
17. Distorted Bead Seat Memo
18. Purchase Order 4503467825

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Show Cause Order
4. Scheduling Hearing Order
5. Employer's Discovery Responses and Requests for Production of Documents
6. Notice of Deposition
7. Joint Motion to Modify Scheduling Order
8. Amended Scheduling Order
9. Joint Motion for Continuance
10. Amended Scheduling Order
11. Employee's Motion to Continue Compensation Hearing
12. Employer's List of Exhibits
13. Employer's Response to Employee's Motion to Continue Compensation Hearing
14. Employee's Pre-hearing Statement and Witness and Exhibit List

7

15. Motion for Brief Extension to File Pre-trial Brief
16. Order Denying Continuance
17. Order Granting Extension of Deadline to File Pre-trial Brief
18. Employer's List of Proposed Exhibits
19. Employer's Supplemental List of Exhibits
20. Employer's Pre-trial Brief
21. Employer's Exhibits to Pre-trial Brief

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Order was sent to the following recipients by the following methods of service on April 5th, 2018.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Zachary Wiley, Employee's Attorney | | | X | zwiley@forthepeople.com |
| Jared Renfroe, Employer's Attorney | | | X | jrenfroe@spicerfirm.com |

_____
**Penny Shrum, Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**